**In re Richard FAMISARAN and Teresita Famisaran, Debtors.**

**Bankruptcy No. 97 B 30285.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 28, 1998.

Henry W. Fruehauf, Chicago, IL, for Movant.

Susan G. Castagnoli, Law Offices of Susan G. Castagnoli & Associates, Naperville, IL, for Respondent.

Jack McCullough, Chicago, IL, Chapter 13 Trustee.

## MEMORANDUM OPINION

JOHN A. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the objections of Seoul Travel Service, Inc. ("Seoul Travel") to confirmation of the Debtors' third amended plan of reorganization, on the motion of Seoul Travel for sanctions against the Debtors pursuant to Federal

Rule of Bankruptcy Procedure 9011, and on the application of Susan G. Castagnoli & Associates ("Castagnoli"), attorney for the Debtors, for fees incurred in the representation of the Debtors. For the reasons set forth herein, the Court sustains the objections of Seoul Travel to the Debtors' third amended plan and dismisses the case pursuant to 11 U.S.C. § 1307(c)(5). Further, under Federal Rule of Bankruptcy Procedure 9011, the Court imposes sanctions against the Debtors for filing false, misleading and inaccurate Schedules I and J and the Statement of Financial Affairs and dismisses the case. The Court awards Seoul Travel its reasonable attorney's fees in the sum of $8,977.50 and expenses incurred in the sum of $420.32. Finally, the Court awards Susan Castagnoli fees in the sum of $3,354.00.

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. They are core proceedings under 28 U.S.C. § 157(b)(2)(A), (L) and (O).

## II. *FACTS AND BACKGROUND*

The genesis of the dispute between the Debtors and Seoul Travel dates back to 1992 regarding airline tickets obtained through use of an NFS check which prompted state court litigation among the parties. *See* Seoul Travel's Exhibit C1. Seoul Travel recovered a judgment against the Debtors for the amount of their NSF check plus interest, attorneys' fees, costs and punitive damages. The Debtors subsequently filed a Chapter 7 bankruptcy case in 1994, which was assigned to Judge Eugene R. Wedoff.

In a related adversary proceeding, Judge Wedoff entered an order on March 16, 1995, finding the debt owed by the Debtors to Seoul Travel in the sum of $25,151.18, inclusive of all costs, collection expenses, interest and reasonable attorneys' fees, nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6). *See* Seoul Travel's Exhibit C2. Seoul Travel then instituted post-judgment proceedings pursuant to Federal Rule of Bankruptcy Procedure 7069 by utilizing the citation proceedings available under Illinois law. *See* Seoul Travel's Exhibit C3. On August 7, 1997, the Court entered an order pursuant to 735 ILCS 5/2–1402(b)(3) and (m)(2) and Illinois Supreme Court Rule 277 which placed a lien upon the employment contract and present and future earnings of the Debtors. *Id.* At this point, Seoul Travel's unpaid judgment plus accrued interest totaled the sum of $29,299.63. *Id.*

On October 2, 1997, the Debtors filed the present case with a Chapter 13 petition and plan. The Debtors also filed their Statement of Financial Affairs and Schedules A through J. *See* Seoul Travel's Exhibit C4. On December 8, 1997, Seoul Travel filed an objection to that plan on the basis that the plan incorrectly treated Seoul Travel as being unsecured. Seoul Travel argued that it was a secured creditor of the Debtors by virtue of the statutory citation lien which was imposed under 735 ILCS 5/2–1402(b)(3) and (m)(2) on the Debtors' employment contracts and earnings with the postal service.

Also on December 8, 1997, the Debtors filed a first amended Chapter 13 plan. On February 25, 1998, Seoul Travel filed a supplement to its initial objections to confirmation of the Debtors' plan. Seoul Travel's supplementary objections to the first amended plan stated: (1) the plan mischaracterized Seoul Travel as an unsecured creditor; (2) the plan discriminated against Seoul Travel in favor of another secured creditor, G.E. Capital, and treated them disparately; (3) the plan failed to propose paying both secured creditors on equal terms; (4) the plan was not proposed in good faith in that it did not accurately reflect either Debtors' projected income and their actual, legitimate and reasonable expenditures; and (5) that Debtor Teresita Famisaran has a compulsive gambling problem by which thousands of dollars every year are squandered away. Seoul Travel stated that many of the representations in the Debtors' Schedules B and J were false. Specifically, Seoul Travel alleged the following misrepresentations: (1) Schedule B incorrectly referenced only one vehicle when in fact the Debtors own and insure two vehicles; (2) in Schedule J the Debtors alleged that they paid rent, but in fact paid none; (3)

the Debtors' medical expenses listed in Schedule J were false and undocumented; (4) the Debtors' renters'/homeowners' insurance expense in Schedule J were false and undocumented; (5) the Debtors' water/sewer expenses in Schedule J were false and undocumented; (6) the Debtors' gas and electric expenses were false and undocumented; (7) the $100.00 monthly phone bill was unnecessary and extravagant; (8) the Debtors failed to disclose the ownership of two cellular phones and their delinquent debt for two cellular lines to MCI Cellular; (9) their clothing expense was extravagant and undocumented; and (10) their food expense was excessive given that the Debtors live with their daughter. Seoul Travel stated that the plan was not feasible and was discriminatory as well as replete with falsehoods, concealments, exaggerations and excessiveness based upon the Debtors' false Schedules.

On that same date, Seoul Travel filed the pending motion for sanctions against the Debtors for filing false and frivolous pleadings. Seoul Travel alleged that the Debtors' Schedules B and J were materially false and misleading as specifically set forth and outlined above in its supplementary objections. The attorney for Seoul Travel, Henry W. Fruehauf ("Fruehauf")[1], attached a certificate to the motion for his fees and expenses incurred. Pursuant to that certificate, Fruehauf expended 70 hours of time at $175.00 per hour for a total of $12,250.00. In addition, he incurred expenses in the sum of $520.32. Fruehauf seeks a multiplier of the actual fees expended in the amount of double the fees for a sum total of $24,500.00.

On June 15, 1998, Seoul Travel filed a second amendatory supplement to its objections to confirmation of the Debtors' plan. This pleading objected to the Debtors' first amended plan that had been filed on December 8, 1997. Trial on the contested confirmation hearing began on June 19, 1998. Thereafter, on July 7, 1998, the Debtors filed their second amended plan and amendments to their Schedules I and J. On that same date, after conclusion of the admitted testimony

and evidence, the Court sustained in substantial part the objections of Seoul Travel to the Debtors' plans and denied confirmation of the original and amended plans without prejudice. The evidence revealed that the Debtors made substantial unauthorized post-petition transfers to their daughters and that Debtor Teresita Famisaran utilized substantial portions of her income for gambling. The Court also determined that Seoul Travel had a secured claim to the extent of fifteen percent of the gross wages of the Debtors. The Court gave the Debtors leave to file and serve a third amended plan on August 7, 1998, and set the confirmation hearing for that plan on September 4, 1998.

On August 17, 1998, the Debtors belatedly filed a third amended plan accompanied by amended Schedules B, D, E, J and I. Seoul Travel filed an objection to the Debtors' third amended plan. This plan, running 60 months in duration with plan payments of $650.00 per month for the term of the plan, provides that Seoul Travel shall be paid the sum of $320.00 per month. The amount to be paid Seoul Travel on its secured claim represents fifteen percent of the Debtors' present wages. The most recently amended Schedules, in particular, Schedules I and J, show some change from the second amended Schedules previously filed. Amended Schedule I, which reflects the current income of the Debtors, showed that Debtor Richard Famisaran no longer had a monthly income of $540.00. Amended Schedule J, which reflects the Debtors' current expenditures, had several changes. For example, the Debtors amended their utilities for heating and fuel from $55.00 to $25.00 per month. In addition, the Debtors reduced their monthly telephone expense from $30.00 to $25.00. The Debtors also reduced their monthly food expense from $206.00 to $200.00. Finally, the dry cleaning and laundry bill was reduced from $50.00 to $39.00 per month.

No amendment to the Debtors' answers to the relevant questions on the Statement of Financial Affairs was filed to detail the pre-

---

1. The Court notes that the tone of the pleadings filed by Fruehauf on behalf of Seoul Travel and many of the statements therein violate the Standards for Professional Conduct Within the Seventh Federal Judicial Circuit, adopted on December 14, 1992. In particular, Fruehauf violates Lawyers' Duties to Other Counsel, ¶s 1 and 2.

petition and post-petition transfers to the Debtors' daughters or the expenditures for gambling losses. At the continued confirmation hearing, no party sought any further evidentiary hearing and the Court took the matters under advisement.

## III. *DISCUSSION*

### A. *Objections of Seoul Travel to Confirmation of the Debtors' Third Amended Plan*

■ Seoul Travel objects to the Debtors' third amended plan for various reasons. First, Seoul Travel maintains that this plan is not feasible. Seoul Travel contends that the plan proposes to pay it $320.00 per month for 60 months for a total of $19,200.00. Seoul Travel notes that its claim, which is secured by fifteen percent of the Debtors' present and future wages from the United States Postal Service, is over $29,000.00. In addition, Seoul Travel has objected to the Debtors retaining the 1995 Mazda 626 for Teresita. Seoul Travel argues that the Debtors are really retaining this vehicle for the benefit of their daughter with whom they reside. Further, Seoul Travel contends that the car is over financed and overvalued by the Debtors as evidenced by their latest amended Schedule B. Lastly, Seoul Travel argues that the third amended plan, like the prior iterations, has not been proposed in good faith under 11 U.S.C. § 1325. By way of example, Seoul Travel further argues that the Debtors have again misstated their income in their Schedules; the original Schedule I reflected that the Debtors paid $1,000.00 per month in rent, which they have now amended to $500.00 per month, but still have not proven nor documented; the Debtors have not proven they actually pay renters' insurance; the Debtors are still asserting $100.00 per month for medical expenses after failing to prove this amount at the trial on the prior plans; the Debtors still claim to own only one vehicle when they in fact own two; the Debtors claim automobile and insurance expenses for two vehicles despite Teresita's admission at trial that she does not drive; and the Debtors have failed to schedule known gifts or transfers to their daughters, or the terms and conditions concerning their cellular phone contracts. Thus, Seoul Travel contends that the Debtors' amended Schedules remain false and incomplete in various respects. Seoul Travel asks that the Court deny confirmation of the third amended plan and dismiss the bankruptcy case.

■ The Bankruptcy Code places an affirmative duty on debtors to accurately file a truthful list of creditors and a substantially correct statement of assets and liabilities and a schedule of current income and expenditures. 11 U.S.C. § 521(1). The debtors have a duty to truthfully answer questions presented in the various schedules and filings carefully, completely and accurately. *Jones v. United States (In re Jones)*, 134 B.R. 274, 279 (N.D.Ill.1991) (citations omitted). Debtors have a duty to use reasonable diligence to complete all requisite documents fully and accurately; failure to perform this duty may result in dismissal of the case or denial of the discharge. *In re Matthews*, 154 B.R. 673, 678 (Bankr.W.D.Tex.1993). Thus, the Bankruptcy Code imposed a duty on the Debtors here which they clearly failed to fulfill, especially in light of the testimony and documentary evidence adduced before the Court at the trial.

Both Debtors testified at the confirmation hearing held on June 19, 1998. They testified that the Schedules were correct and that they filed the plans in a good faith effort to repay their creditors. They also testified that they live with their daughter because they are unable to obtain a lease or mortgage on their own. They further stated that the amount of rent reflected in the Schedules is their fair share for the rent and that they pays this sum in cash directly to their daughter. Finally, Teresita Famisaran testified that on occasion she visits and gambles on the Illinois river boats.

The Debtors' credibility was successfully impeached by the documentary evidence adduced by Seoul Travel which showed the Debtors' income was greater than that scheduled and that their actual expenditures were markedly different from those detailed on Schedule J. Restituto Sarmenta, Jr. ("Sarmenta"), an assistant manager at Seoul Travel, also testified. Based on his review and

analysis of the Debtors' subpoenaed bank records and canceled checks, he prepared a spreadsheet summarizing the Debtors' spending habits over an approximate eight-month period in 1997 both pre-petition and post-petition. *See* Seoul Travel's Exhibits C5, C6, C7 and C8. Although Sarmenta is not an accountant, he compared the canceled checks and bank records of the Debtors to show the marked contrast with their filed Schedules I and J. He concluded that the Schedules were false, inaccurate and misleading. For example, there were no canceled checks for rental payments or utilities. Further, he discovered numerous checks that were made payable to the Debtors' daughters, Kimberly and Kirstyn. *See* Seoul Travel's Exhibit C8 at pp. 3 and 5. In addition, Sarmenta testified that the documents proved that the Debtors wrote numerous undisclosed checks to Hollywood Casino. *Id.* at p. 1. Furthermore, for that same eight month period, the Debtors made numerous automatic teller machine withdrawals at the machine located on the gambling boat. *Id.* at p. 2. None of these expenditures were referenced on the Debtors' Schedules or their Statement of Financial Affairs, either as originally filed or in the amendments filed subsequent to the trial.

■ The Court holds that the Debtors' failure to list or credibly explain these expenditures on their Schedules or Statement of Financial Affairs constitutes grounds for denial of confirmation of their third amended plan as well as dismissal of the bankruptcy case. The Debtors have the burden of proof and persuasion for confirmation of their Chapter 13 plan under the statutory requirements of 11 U.S.C. §§ 1325 and 1326. The Court has an obligation to determine whether a debtor carries the burden to show that all elements required of a plan filed under Chapter 13 have been met, whether or not any party in interest objects. *In re Rimgale,* 669 F.2d 426, 431 (7th Cir.1982). The Court must confirm a filed Chapter 13 plan after parties in interest have been given proper notice, if it meets six requirements of § 1325(a), including that "the plan has been proposed in good faith...." 11 U.S.C. § 1325(a)(3). As to the good faith inquiry into the filing of the Chapter 13 plan, the

Court looks at the totality of the circumstances. *In re Schaitz,* 913 F.2d 452, 453–56 (7th Cir.1990); *In re Smith,* 848 F.2d 813, 816–22 (7th Cir.1988); *Rimgale,* 669 F.2d at 431–33.

Here the Debtors' Schedules I and J and their Statement of Financial Affairs are inaccurate and not truthful or credible and have been successfully impeached through the documentary evidence consisting of the Debtors' own bank records and related documentation of their actual earned income. The Court will not condone nor excuse or overlook the filing of false, inaccurate and misleading Schedules. *See, e.g., Britton Motor Serv., Inc. v. Krich (In re Krich),* 97 B.R. 919 (Bankr.N.D.Ill.1988) (debtor's omissions of assets from schedules and failure to properly amend constituted knowing and fraudulent conduct warranting the denial of the discharge); *Soft Sheen Prods., Inc. v. Johnson (In re Johnson),* 98 B.R. 359 (Bankr.N.D.Ill. 1988) (same); *Netherton v. Baker (In re Baker),* 205 B.R. 125 (Bankr.N.D.Ill.1997) (same).

■ The third amended plan in Paragraph 4C provides that Seoul Travel shall receive on its secured claim $320.00 per month for a period of 60 months. This totals only $19,-200.00, less than the principal of the original judgment amount. This is inconsistent with Paragraph 2 of the plan which provides that creditors with secured claims shall be paid one-hundred percent. Therefore, the Court concludes that this plan does not satisfy the requirements of § 1325(a)(5) because it does not provide for the full satisfaction of the judgment awarded to Seoul Travel found nondischargeable in the prior case by Judge Wedoff now secured by a pre-petition statutory lien. The value of the property to be distributed under the plan on account of Seoul Travel's claim is less than the allowed amount of its statutory lien claim which extends to the Debtors' pre-petition and post-petition earnings from the postal service, even those which come due after the term of the plan. Seoul Travel has not accepted the plan.

Because of the above discussed inaccuracies and incomplete disclosures made in the

Debtors' Schedules and Statement of Financial Affairs, and the fact that this plan does not satisfy § 1325(a)(3) or (5), the Court sustains the objections of Seoul Travel to the third amended plan. Next, the Court will discuss Seoul Travel's request to dismiss the case.

Pursuant to 11 U.S.C. § 1307(c), the Court has the power to dismiss a bankruptcy case for cause. Section 1307(c) provides:

> (c) Except as provided in subsection (e) of this section, *on request of a party in interest* or the United States trustee and *after notice and a hearing, the court may* convert a case under this chapter to a case under chapter 7 of this title, or may *dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—*
>
> > *(5) denial of confirmation of a plan under section 1325 of this title....*

■ 11 U.S.C. § 1307(c)(5) (emphasis supplied). These listed "causes" are not exhaustive, nor is the Court limited to this list. *See Ekeke v. United States*, 133 B.R. 450, 452 (S.D.Ill.1991). Denial of confirmation of the third amended plan, when coupled with the false, misleading and inaccurate filing of the Statement of Financial Affairs and Schedules I and J further warrants the dismissal of the bankruptcy case and constitutes ample grounds for the Court to dismiss the case. The Debtors have had ample opportunity to propose a facially confirmable plan to fairly deal with all of their creditors' claims, as well as the nondischargeable judgment debt of Seoul Travel. The Debtors have been less than candid and their credibility has been convincingly impeached. The appropriate action to be taken at this stage is the dismissal of the case.

**B.** ***Seoul Travel's Motion for Sanctions Pursuant to Federal Rule of Bankruptcy Procedure 9011***

■ Seoul Travel seeks sanctions against the Debtors pursuant to Federal Rule of Bankruptcy Procedure 9011 for their misrepresentations in their Schedules. Bankruptcy Rule 9011 provides in relevant part:

(a) SIGNATURE. Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name....

(b) REPRESENTATIONS TO THE COURT. *By presenting to the court (whether by signing, filing, submitting,* or later advocating) a petition, pleading, written motion, or *other paper,* an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

*(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and*

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information and belief.

(c) SANCTIONS. *If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.*

(1) How Initiated

(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions

may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation· shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). *If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion....* (2) Nature of Sanction; Limitations. *A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.* Subject to the limitations in subparagraphs (A) and (B), *the sanction may consist of, or include,* directives of a nonmonetary nature, an order to pay a penalty into court, or if imposed on motion and warranted for effective deterrence, *an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation.* . . .

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

Fed.R.Bankr.P. 9011 (emphasis supplied). Bankruptcy Rule 9011 and Federal Rule of Civil Procedure 11 are substantially analogous and cases interpreting Rule 11 are useful in analyzing Bankruptcy Rule 9011. The Debtors signed the original plan and amended Schedules and the answers to the Statement of Financial Affairs proven and found to be false as discussed above which triggered the potential for sanctions under this Rule.

Under Bankruptcy Rule 9011, the conduct of the signer of the document in question must be examined by inquiring as to what was objectively reasonable to believe at the time the pleading was signed. *State Bank of India v. Kaliana (In re Kaliana),* 207 B.R. 597, 601 (Bankr.N.D.Ill.1997) (citing *LaSalle Nat. Bank of Chicago v. County of DuPage,* 10 F.3d 1333, 1338 (7th Cir.1993)); *American Express Travel Related Servs. Co., Inc. v. Baker,* 213 B.R. 834, 838 (N.D.Ill. 1997). A party's conduct may be sanctionable if it was either "frivolous," which relates to an improper investigation into the facts or law before commencement, or done for an improper purpose. *Id.* (citations omitted). Under either of these prongs, the Court must employ an objective standard to determine whether the conduct of the party upon whom sanctions is sought was reasonable. *Id.* (citations omitted).

The Court finds that the Debtors' Schedules I and J and the answers to the pertinent questions on the Statement of Financial Affairs are misleading, false and thus incorrect as previously outlined. In particular, the Debtors' income was materially understated; the transfers to the insider relatives and expenditures for gambling were omitted; the various line items for average monthly expenditures on Schedule J were materially false as unsupported by the Debtors' bank records and canceled checks. Hence, these key papers were filed for an improper purpose, namely in an attempt to conceal income and the expenditures thereof thereby diverting such resources from payments to their creditors.

These failures and omissions are particularly significant because pursuant to Federal Rule of Bankruptcy Procedure 1009(a), the Debtors could have amended their Schedules to address Seoul Travel's legitimate concerns and to conform such key pleadings to the evidence adduced at trial. After all, in light of the liberality afforded debtors under Bankruptcy Rule 1009(a), the Seventh Circuit has adopted a permissive approach of allowing amendment of schedules at any time prior to the case being closed. *See Szymanski v. Herzog (In re Szymanski),* 189 B.R. 5, 7 (N.D.Ill.1995).

As one sanction for filing misleading and false Schedules and the Statement of Financial Affairs and then not correcting the written record to make proper and complete

disclosure after the true state of affairs was revealed by the objecting creditor, the Court hereby dismisses the bankruptcy case. The Court believes that this sanction under Bankruptcy Rule 9011 is warranted as it is sufficient to deter repetition of such conduct or comparable conduct by the Debtors or others similarly situated. The Court abhors the occasionally discovered instance of debtors filing false and or incomplete schedules. Under § 521(1), all debtors have a duty to file complete and truthful schedules of assets and liabilities, schedules of current income and current expenditures and a statement answering required questions concerning their financial affairs. Section 521(1) imposes an important duty on debtors to accurately report the required information per the requisite Official Forms. The Debtors here were derelict in that duty by not disclosing numerous unscheduled transfers to insider relatives and gambling losses both pre-petition and post-petition which would have been concealed from the Court had not Seoul Travel and its attorney gone to the extent of discovering the true situation and how the Debtors were actually spending their money.

 In addition, the Court has the express and independent duty to refer this matter to the United States Attorney for the Northern District of Illinois as required by 18 U.S.C. § 3057(a) whenever reasonable grounds exist for a belief that a violation of the bankruptcy laws has occurred. *See State Bank of India v. Kaliana (In re Kaliana),* 202 B.R. 600, 606 (Bankr.N.D.Ill.1996); *Flushing Savs. Bank v. Parr (In re Parr),* 13 B.R. 1010, 1020 (E.D.N.Y.1981); *In re Lewis,* 51 B.R. 353, 355 (Bankr.E.D.N.Y.1985). The Court has reasonable grounds to believe that the Debtors knowingly and fraudulently filed false and inaccurate Schedules and the Statement of Financial Affairs in violation of 18 U.S.C. § 152(2); knowingly and fraudulently made false statements under penalty of perjury in their verified Schedules and Statement of Financial Affairs violative of 18 U.S.C. § 152(3); or committed bankruptcy fraud in violation of 18 U.S.C. § 157(3). Accordingly, a copy of this Opinion and Order shall be transmitted to the United States Attorney for the Northern District of Illinois with the request that the report under 18

U.S.C. § 3057(b) be furnished to the undersigned upon completion of the inquiry into this matter.

Furthermore, the Court awards Seoul Travel its reasonable and necessary attorney's fees. Fruehauf, attorney for Seoul Travel, seeks fees in the sum of $12,250.00 for 70 hours of time at $175.00 per hour, plus a multiplier of twice that amount for a total of $24,500.00. Fruehauf also seeks his reasonable expenses in the sum of $520.32. Most of the expenses incurred consist of photocopying charges, messenger services, witness fees and certified mail charges. The Court finds that these expenses were both reasonable and necessary. The Court will not allow the $100.00 expense for a "stand-in fee to Atty. Art Sanderman." This entry lacks the requisite specificity necessary for the Court to determine whether it was both reasonable and necessary. Moreover, Fruehauf was the only attorney of record who appeared on behalf of Seoul Travel. Accordingly, the Court hereby awards Seoul Travel its actual expenses incurred in the sum of $420.32.

 The Court will not award Seoul Travel any multiplier of its requested fees. No authority for this proposition has been cited. Seoul Travel's failure to cite supporting case citation or authority results in the forfeiture of the point. *See LINC Finance Corp. v. Onwuteaka,* 129 F.3d 917, 921 (7th Cir.1997); *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990). Rather, the Court will only allow those fees which it deems are reasonable and necessary and no punitive multiplier is appropriate here. Bankruptcy Rule 9011(c)(2) limits the award to only that sufficient to deter repetition of the offense. The Court has carefully considered the time expended by counsel for Seoul Travel and finds that some of that time spent was not reasonable or necessary and was excessive. The Court notes that Fruehauf expended approximately 16 hours on the trial dates on June 19, 1998 (6.2 hours) and July 7, 1998 (10 hours) on its objections to confirmation. The Court finds this amount of time excessive as the trial lasted approximately 3½ hours on June 19, 1998 and 1½

hours on July 7, 1998. The Court will only allow approximately one-half of that time or 8 hours which allows for adequate final pretrial preparation on both dates. In addition, Fruehauf asserts that he expended on that later date 3.9 hours of time to prepare his certificate of time and expenses to the instant motion for sanctions. That amount of time to prepare a four-page document with a summary of his time expended and services rendered is excessive. Hence, the Court will only allow 2 hours of time expended on that task.

Additionally, on December 10, 1997, Fruehauf expended 1.20 hours on "long ltr. and 14–page fax of relevnt. docs. to Art S." The Court finds this entry somewhat cryptic and the time spent drafting a letter and faxing a document excessive. Hence, the Court will allow only one-half of the time expended on that date. Also, on January 9, 1998, Fruehauf spent 1.80 hours preparing a notice and motion to continue the confirmation hearing. The Court finds this expenditure of time unreasonable and excessive and hereby allows only .80 hours.

Fruehauf has a time entry on February 5–23, 1998, for 1.70 hours in which he reviewed and analyzed the Debtors' checks and spending patterns. This entry clearly "lumps" several activities on different days. When a fee request "lumps" together many different activities in a single block of time, the Court will disallow those entries because it is impossible for the Court to discern from the face of the request whether the time expended on each specific task was reasonable and necessary. *See In re Wiedau's Inc.,* 78 B.R. 904, 908 (Bankr.S.D.Ill.1987). The Court is unable to ascertain the reasonableness of the time spent on each specific task on any given day. Thus, the Court disallows the entire amount expended. For these same reasons, the Court disallows the time expended by Fruehauf on February 20–23, 1998 for a total of 1.90 hours and on March 23–June 18, 1998 for 1.90 hours. Finally, the Court disallows the entry for "November 97–now" for miscellaneous telephone conversations between Fruehauf and various people for a total of 1.0 hours. This entry is vague and does not specify the exact dates or amount of time

spent on each conversation. In sum, the Court disallows a total of 18.70 hours or $3,272.50 of the fees requested. The Court finds that the remainder of the fees both reasonable and necessary.

### C. *Motion of Debtors' Attorney for Fees*

Castagnoli, as attorney for the Debtors, seeks fees in the total sum of $5,041.50. She contends that had it not been for a great deal of involvement by Seoul Travel, the case would have proceeded to confirmation with little extra attorney involvement. She further notes that the Debtors filed three plans and have had extensive interaction with her in an attempt to conform to the Court's directive concerning confirmation. She states that the fees were agreed to by the Debtors and were both reasonable and necessary.

Seoul Travel argues that Castagnoli's request for fees is "grossly excessive" and inaccurate. Seoul Travel contends that she wasted time advancing positions or fighting fights that she should not have reasonably or honestly advocated or chose to combat. Further, Seoul Travel maintains that Castagnoli's efforts achieved nothing in this case because the Debtors' plan still has not been confirmed. Further, Seoul Travel points out that Castagnoli did not amend the Schedules after the evidence adduced at the confirmation hearing bore out that the Debtors had misleading and false information in their Schedules I and J and omitted reference to the insider transfers and gambling losses. Finally, Seoul Travel objects to Castagnoli's hourly rate of $195.00 on the basis that the quality of her work was generally poor.

Pursuant to 11 U.S.C. § 330, professionals applying for fees payable out of the bankruptcy estate must demonstrate that their services were actual, necessary and reasonable. Specifically, § 330(a)(4)(B) provides in relevant part:

> In a ... chapter 13 case in which the debtor is an individual, *the court may allow reasonable compensation to the debtor's attorney* for representing the interests of the debtor in connection with the bankruptcy case *based on a consideration of the benefit and necessity of such services*

*to the debtor and the other factors set forth in this section.*

11 U.S.C. § 330(a)(4)(B) (emphasis supplied). Those other factors that are referred to are set forth as follows:

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

4(A) Except as provided in subparagraph (b), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

11 U.S.C. § 330(a)(3) and (4).

The Court has a duty to examine independently the reasonableness of the fees requested. *In re Wyslak*, 94 B.R. 540, 541 (Bankr.N.D.Ill.1988); *In re Chicago Lutheran Hosp. Ass'n*, 89 B.R. 719, 734–35 (Bankr. N.D.Ill.1988). The burden of proof to show entitlement to the fees requested is on the Law Firm. *See In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir.1994); *In re*

*Stoecker*, 114 B.R. 965, 969 (Bankr.N.D.Ill. 1990); *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr.N.D.Ill.1987); *Cohn v. United States Trustee (In re Ostas)*, 158 B.R. 312, 323 (N.D.N.Y.1993). This burden must "not be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors." *Pettibone*, 74 B.R. at 299 (citations omitted). The fee application must stand or fall on its own merits. *See In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill.1987).

The Court has utilized the factors cited in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The twelve *Johnson* factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.[2]

The Court may determine what is the reasonable amount of time a professional should have to spend on a given project. *Wildman*, 72 B.R. at 713 (citing *In re Shades of Beauty, Inc.*, 56 B.R. 946, 951 (Bankr.E.D.N.Y.1986), *aff'd in part, remanded in part*, 95 B.R. 17 (E.D.N.Y.1988)). The Supreme Court, in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), ruled that "excessive, redundant or otherwise unnecessary" hours should be excluded from the fees sought. In other words, applicants should exercise good faith "billing judgment." *Id.* at 434, 103 S.Ct. 1933; *see also In re Temple Retirement Community, Inc.*, 97 B.R. 333, 339 (Bankr. W.D.Tex.1989); *In re Pothoven*, 84 B.R. 579, 584 (Bankr.S.D.Iowa 1988).

---

**2.** The *Johnson* factors are referenced in Rule 1.5(a) of the Rules of Professional Conduct for the Northern District of Illinois, applicable here via Local Bankruptcy Rule 608. All of these factors have been considered in this matter.

■ Reasonable time spent does not necessarily include all time actually expended. *See In re Chas. A. Stevens & Co.*, 105 B.R. 866, 870–71 (Bankr.N.D.Ill.1989). Hence, the exercise of good faith billing judgment comes into play. Compensation will not be awarded for nonproductive time, or for time spent on services that are duplicative of previously rendered services. Duplication of services constitutes an unreasonable expenditure of time and therefore is noncompensable. In determining what constitutes reasonable compensation, the Seventh Circuit has stated that "there are limits—measured by standards of reasonableness—to what a professional can demand in a bankruptcy case." *Leventhal,* 19 F.3d at 1178.

The Seventh Circuit has stated that the appropriate measure for determining reasonable attorneys' rates charged is the market approach. *See In re Continental Illinois Secs. Litig.,* 962 F.2d 566, 572 (7th Cir.1992) ("The object in awarding a reasonable attorney's fee ... is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible. In other words the object is to simulate the market where a direct market determination is infeasible."). The Court also views the attorney/client relationship as one in which the terms of the engagement should normally be upheld, including the fee arrangement, so as not to unduly intrude upon the bargain struck between the parties who have entered into an important professional relationship. Moreover, the Seventh Circuit has noted that the Bankruptcy Code requires that attorneys involved in bankruptcy matters receive the same compensation as they would earn in performing similar services outside the bankruptcy context. *See In re UNR Indus., Inc.,* 986 F.2d 207, 209–10 (7th Cir.1993).

■ First, the Court finds that Castagnoli's hourly rate is reasonable and well within the range of hourly rates charged by other Chapter 13 debtors' attorneys. The Court does not agree that the quality of her work has been generally poor in this matter. As bridge aficionados must play the hands they are dealt, so also must attorneys advocate as best they can their clients' cases on the pertinent facts in light of the applicable law. In bridge parlance, not every Chapter 13 debtor's attorney is dealt a lay down grandslam when confronted with an attempted bankruptcy reorganization.

■ The Court does agree with a portion of Seoul Travel's objections to Castagnoli's fees in that there was little benefit and questionable necessity of some of the time expended. The Court finds that time expended by Castagnoli cryptically referenced as "work on finalization of objection to discharge" on March 10, 1998, was not reasonable nor beneficial to the Debtors because no objections to discharge were filed by Seoul Travel. In addition, Castagnoli expended 9.50 hours on the trial dates on the objection to confirmation. The Court finds this expenditure of time unreasonable and only allows Castagnoli 9 hours for her time spent, the same amount of time the Court allowed Fruehauf. Lastly, the Court notes that Castagnoli seeks fees on September 8, 1997, in the sum of $1,200.00 as her standard fee to represent debtors in a bankruptcy case. Castagnoli, however, did not submit any time entries in support of this portion of her requested fees. The Court hereby disallows the entire $1,200.00 because Castagnoli did not submit the requisite detailed time entries. The Court has established $1,000.00 as the figure below which Chapter 13 debtors' attorneys need not itemize their services rendered and time expended. *See In re Geraci,* 138 F.3d 314, 321 (7th Cir.1998) ("it is not an abuse of discretion for the court to set a presumptively reasonable fee and then to require documentation to substantiate a fee in excess of that amount."). The disallowance of the $1,200.00 is without prejudice to Castagnoli submitting her actual time expended. Accordingly, the Court allows Castagnoli fees in the sum of $3,354.00.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby sustains the objections of Seoul Travel to the Debtors' third amended plan and dismisses the case pursuant to 11 U.S.C. § 1307(c)(5). Further, under Federal Rule of Bankruptcy Procedure 9011, the Court imposes sanctions against the Debtors for

filing false, misleading and inaccurate Statement of Financial Affairs and Schedules I and J. The Court hereby awards Seoul Travel its reasonable attorney's fees in the sum of $8,977.50 and expenses incurred in the amount of $420.32. In addition, the Court dismisses the bankruptcy case. Finally, the Court awards Castagnoli attorney's fees in the sum of $3,354.00.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.