**In re Mary Kay McNICHOLS, Debtor.**

**No. 99 B 18053.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 26, 2000.

---

Arthur G. Jaros, Jr., Richter, Jaros & Robinson, Oak Brook, IL, for debtor.

Barry A. Chatz, Steven J. Christenholz, Miriam R. Stein, Kamensky & Rubinstein, Lincolnwood, IL, Francis X. Buckley, Jr.,

Thompson Coburn, LLP, St. Louis, MO, for Equity Insurance Managers, LLC.

Glenn Stearns, Lisle, IL, Chapter 13 Standing Trustee.

Gerald Mylander, Office of Glenn Stearns, Chapter 13 Standing Trustee, Lisle, IL, for trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the motion of Equity Insurance Managers, LLC ("Equity") for adequate protection of its secured interest pursuant to 11 U.S.C. § 361; on the objections of Equity and Glenn Stearns, the Chapter 13 Standing Trustee (the "Trustee") to confirmation of the third amended plan of Mary Kay McNichols (the "Debtor"); and on the motions of Equity and the Trustee to dismiss the bankruptcy case with prejudice. For the following reasons, the Court sustains, in part, the objections of the Trustee and Equity to the Debtor's third amended plan and denies confirmation. In addition, the Court grants the motions to dismiss the bankruptcy case with prejudice under 11 U.S.C. § 349(a) and 11 U.S.C. § 1307(c)(5). The Debtor is barred from filing another

bankruptcy case for one year. Finally, Equity's motion for adequate protection is moot as a result of the dismissal of the bankruptcy case.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings under 28 U.S.C. § 157(b)(2)(A), (L) and (O).

## II. FACTS AND BACKGROUND

The genesis of this case results from a state court judgment entered on April 22, 1999 against the Debtor and in favor of Equity in the sum of $91,000.00 plus costs. The Debtor's appeal is currently pending before the Illinois Appellate Court, First District. Rather than file a supersedeas bond the Debtor filed this Chapter 13 case on June 7, 1999. The Debtor has now filed four versions of a plan. The Trustee and Equity have raised various objections to the plans on a variety of grounds, including, but not limited to, the treatment of Equity's claim.[1]

---

1. On June 22, 1999, the Debtor's original plan and Schedules were filed. The Debtor's original plan proposed to pay only $18.45 per month to the Trustee for a period of thirty-six months. Additionally, the Debtor's Schedule I failed to disclose her non-filing spouse's income. Finally, the plan stated that the Debtor would object to paying any part of Equity's claim.

On September 27, 1999, the Debtor filed a first amended plan along with a supporting memorandum of law and amended Schedules I and J. The Amended Schedules I and J disclosed her spouse's income and apportioned the family expenses evenly between the Debtor and her spouse. This new apportionment allowed the Debtor to increase her proposed monthly payments under the first amended plan to $1,057.03 from $18.45. The first amended plan further proposed to pay all unsecured debts to which the Debtor's spouse is also liable in full and only pay the remaining unsecured claims their pro rata share of

$11,000.00. The plan again stated that the Debtor intended to object to paying any part of Equity's claim. If the Debtor were to pay Equity's claim, the plan would have been unfeasible unless funds were taken out of the Debtor's 401(k) plan.

On October 1, 1999, the Debtor filed a second amended plan. This version included the payments due to Aetna Life Insurance Company within the plan. This change, however, did not affect the plan's proposed distribution to the general unsecured creditors. The second amended plan reduced the amount available to general unsecured creditors from $11,000.00 to $9,000.00, while still paying the unsecured debts with a co-debtor in full. Once again, the plan stated that the Debtor intended to object to paying any part of Equity's claim. If the Debtor were to pay Equity's claim, the plan would have been unfeasible unless funds were taken out of the Debtor's 401(k) plan.

The Trustee and Equity both filed objections to the Debtor's second amended plan and motions to dismiss or convert the case. The Court took those matters under advisement, and, on May 25, 2000, issued a lengthy Memorandum Opinion which contains numerous findings and conclusions and additional background information. *See In re McNichols,* 249 B.R. 160 (Bankr. N.D.Ill.2000). In that Opinion, the Court sustained, in part, objections of the Trustee and Equity to the Debtor's second amended plan, thereby resulting in denial of confirmation of that plan. The Court afforded the Debtor fourteen days to file a third amended plan. The Court reserved ruling on those motions to dismiss. *Id.* at 181–82.

On June 8, 2000, the Debtor filed a third amended plan, a memorandum in support of the plan and her second amended Schedules I and J. The Debtor's amended Schedules show her revised disposable income of $1,948.13 per month instead of the $1,881.00 per month in the second amended plan. Thus, the third amended plan increases the monthly plan payment by $67.13 per month for the thirty-six month term of this plan.

On June 30, 2000, the Trustee filed another motion to dismiss and objected to confirmation of the third amended plan. Equity filed its objection to confirmation of the plan on July 13, 2000. On August 18, 2000, the Court held an evidentiary hearing on confirmation of this plan. At the close of the hearing, the Court requested that the Debtor, the Trustee and Equity submit their closing arguments in writing. Each party has done so.

The Trustee's objections to the Debtor's third amended plan include the following: (1) many of the monthly expenses listed in the Debtor's second amended Schedule J are unreasonable and excessive or for luxury items ($295 for telephone/cellular phone; $1,170.00 for food; $410.00 for clothing; and $400.00 for laundry and dry cleaning); (2) the Debtor had deleted the line items that were identified by the Court as luxurious from her spouse's expenses, but left her disposable income unchanged; (3) the plan unfairly discriminates against unsecured creditors because the Debtor proposes to pay co-signed unsecured debts at a higher rate than general unsecured debts; (4) this plan is unclear and confusing as was the prior version; and (5) dismissal of the bankruptcy case is warranted because the Debtor has proposed the plan in bad faith and has manipulated her expenses and attempted to hide disposable income.

Equity objects to confirmation of the plan and requests either conversion or dismissal on the following grounds: (1) the discrimination against Equity and the general unsecured creditors in the Debtor's plan is not sanctioned by 11 U.S.C. §§ 1322(b)(10) or (b)(4) and violates the requirements of the Court's prior Opinion and § 1322(b)(1); (2) the Debtor's refusal to commit all of her disposable income to the plan violates the Court's Opinion and 11 U.S.C. § 1325(a)(3) and (b)(2); (3) the Debtor's failure to file a proper plan or prosecute the case in good faith violates § 1325(a)(3); and (4) the Debtor's inability to propose a feasible plan which is not speculative or uncertain violates § 1325(a)(6).

## III. *DISCUSSION*

### A. *Objections to Confirmation*

 The Debtor has the burden of proof and persuasion for confirmation of her Chapter 13 plan under the statutory requirements of 11 U.S.C. §§ 1325 and 1326. The Court has an obligation to determine whether a debtor carries the burden to show that all elements required of a plan filed under Chapter 13 have been met, whether or not any party in interest objects. *In re Rimgale,* 669 F.2d 426, 431 (7th Cir.1982). The Court must confirm a filed Chapter 13 plan after parties in interest have been given proper notice, if it meets the six requirements of § 1325(a),

including that "the plan has been proposed in good faith . . . ." 11 U.S.C. § 1325(a)(3).

The Court finds that the Debtor's current plan discriminates against Equity and the general unsecured creditors; such treatment is not sanctioned by § 1322(b)(10) or § 1322(b)(4); it violates the Court's clear directive in its prior Opinion; and it violates § 1322(b)(1). *See McNichols*, 249 B.R. at 177–79. The Debtor's third amended plan only makes minor changes from the previous plan regarding the treatment of Equity's claim. The current version of the plan provides that Equity is to receive monthly interest payments at 9% on its secured claim, with the principal of the secured claim to be paid "no later than 120 days after (i) the completion of all appeals of the state court judgment, (ii) the expiration of all appeal rights therefrom, and (iii) the completion of all challenges under federal bankruptcy law (including appeals) to the allowance of the secured claim of Equity . . . ." rather than at the end of the plan. *See* Debtor's Third Amended Chapter 13 Plan at p. 5.

■ The Debtor contends that this treatment of Equity's claim is sanctioned by § 1322(b)(10) and is in compliance with the Court's Opinion and § 1322(b)(1). The Debtor argues that the Court incorrectly interpreted § 1322(b)(1) in its Opinion by holding that the payment of Equity's senior secured claim at the end of the plan, after payment to junior secured and unsecured creditors, is unfairly discriminatory. Further, the Debtor contends that she should not have to incur income tax and withdrawal penalties for taking the funds out of her IRA accounts until the litigation with Equity is complete.

The Court previously addressed these issues. First, the Court expressly found that the payment of the principal of Equity's secured claim, after payment to other junior secured and unsecured creditors, violated both § 1322(b)(10) and § 1322(b)(4). Specifically, the Court stated:

The Court finds that this treatment of Equity's secured claim in the last month of the Plan, while the Debtor pays First Union's junior secured claim throughout the term of the Plan, unfairly discriminates against Equity, and thus such treatment is not sanctioned by § 1322(b)(10). It also violates § 1322(b)(4). Further, the Court finds that this Plan provision has no correlative benefit to the other unsecured creditors. The other creditors would not be affected if the Debtor were to draw on her 401(k) plan now instead of in three years. Consequently, the discriminatory treatment of Equity's claim is unfair and confirmation of the Debtor's Plan must be denied for this reason.

249 B.R. at 179. The Court finds that the unfair discrimination as to Equity is present in the Debtor's current plan because it proposes to pay allowed administrative claims, unsecured claims and the junior secured claim of First Union (both as to principal and interest accruing on that mortgage lien, which is subordinate to Equity's judgment lien) prior to the secured claim of Equity. The Debtor's proposal to make monthly interest payments to Equity does not render the discrimination fair.

Moreover, the plan proposes to utilize exempt assets to make the payment to Equity. As the Court has already stated, if the plan were to fail or if the Debtor decided not to proceed with the case in the thirty-fifth month of the plan, Equity would have received no principal payments from the Debtor and would be left with no recourse against the Debtor's exempt assets for payment of its claim. *Id.* at 178. The plan purports to waive the Debtor's exemption in her 401(k) assets to the extent of Equity's secured claim. The Court finds this insufficient to cure the manifest discrimination against Equity in favor of the junior secured claim of First Union.

Next, the Court already considered the Debtor's proposal to pay Equity's secured claim after all of the state court litigation is complete, rather than at the end of the

plan. The Court noted that "the Debtor proposes to shorten the time frame of payment to Equity in the event that the litigation concerning Equity's claim is completed sooner than the three-year term of the Plan. This is insufficient to meet the requirements of § 1322." *Id.* The Court held that the Debtor's plan "must give Equity's secured claim proper consideration and priority in time over First Union's junior mortgage claim." *Id.* at 175. That the Debtor has proposed yet another plan that seeks to pay Equity interest only, while paying principal on the claims of all other claimants, both secured and unsecured, violates both this Court's Opinion and § 1322(b)(10) and (b)(4).

Moreover, it is by no means certain that the Debtor's state court litigation will be completed by the end of this plan term. At last report, the Debtor's appeal was briefed in the Illinois Appellate Court, and awaiting the scheduling of oral arguments. When that may occur, when the Illinois Appellate Court may rule, and when further possible appeals to the Illinois Supreme Court and United States Supreme Court may finally be concluded is unknown. The Court knows that the parties' exhaustion of their respective appellate rights could take more than the approximate two years remaining under the term of the plan, inasmuch as the Debtor has been making regular payments to the Trustee for over one year under her various plan versions.

This practical uncertainty of when the principal of Equity's claim would be repaid is compounded further by the plan provisions deferring same until after the completion of all appeals under federal bankruptcy law. This would include appeals to the District Court, the Seventh Circuit Court of Appeals and the United States Supreme Court-a period of time that can easily exceed two or more years. It is thus not inconceivable that the aggregate time, prior to any principal payment to Equity, could easily exceed the five year maximum plan term prescribed by 11

U.S.C. §§ 1322(d) and 1329(c). At this point, it is obvious that the Debtor intends to litigate with Equity to the hilt until the state court decision is reversed or the last motion in the highest appellate court has been decided. Thus, it is still uncertain just when Equity would be paid the full, or any, amount of principal on its secured claim if it prevails in the ongoing state court litigation with the Debtor.

Finally, the Debtor's arguments with regard to the potential taxes and penalties for early withdrawal from her IRA were also rejected by the Court in its Opinion because the Debtor failed to cite any authority for her proposition. 249 B.R. at 179. In her closing argument, the Debtor again tries to argue that "avoiding such tax and related penalties" is allowed by the Bankruptcy Code. Once again, however, the Debtor fails to cite any supporting case authority for her position. Consequently, once again the Court must reject this argument as legally unsupported. *See LINC Fin. Corp. v. Onwuteaka,* 129 F.3d 917, 921 .(7th Cir.1997); *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990). The Debtor has failed to correct the flaws in the plan as pointed out by the Court in its prior Opinion. Therefore, the Court finds that the plan is not supported by § 1322(b)(10) or § 1322(b)(4). Thus, for these reasons, the Court must deny confirmation of the Debtor's third amended plan.

■ In addition, the Court finds that the Debtor's third amended plan unfairly discriminates against the general unsecured creditors and thus fails to meet the requirements of § 1322(b)(1). The current version of the Debtor's plan provides that the debts for which the Debtor's spouse is also liable are to be paid at 40% of the total amount due, while the remaining unsecured creditors are to be paid approximately 10% of the total amount due. The Court held that while the Bankruptcy Code allows the Debtor to treat these types of claims differently than other unsecured claims, such treatment must not

discriminate unfairly against the other unsecured creditors. *Id.* at 176–77. In measuring the disparate treatment of these types of claims, the Court employed a "balancing test" to determine the impact of the bankruptcy filing on the nonfiling co-debtor and whether the nonfiling co-debtor has the ability to pay his share of the debt. *Id.* at 176. After analyzing the potential impact on the finances of the co-debtor spouse, the Court found that the Debtor's spouse "clearly has the ability to pay his share of any joint unsecured debt." *Id.* As a result, the Court held that the treatment of co-debtor debts was improper. *Id.* at 176–77.

The Debtor's second amended Schedules I and J show that her spouse has $2,714.00 in excess monthly income over the budgeted family expenses. The Court will not confirm the Debtor's plan, which attempts to pay the co-debtor unsecured debts four times the amount being paid to the other general unsecured creditors without any explanation or clear showing why the Debtor's spouse cannot pay these debts in full. The second amended Schedule J footnotes the unsupported conclusion that the spouse's assets and disposable income are exempt from the Debtor's creditors in both Chapter 7 and in Chapter 13 and are excluded from § 1325. While the non-debtor spouse's income is separate from the Debtor's disposable income as defined in § 1325(b), and he is protected by the co-debtor stay of 11 U.S.C. § 1301(a), there are obvious exceptions to that stay under § 1301(c)(1)–(3), that include plans like the plan at bar, which does not propose to pay the co-debtor claims in full. Based on this flaw, the Court must deny confirmation of the Debtor's third amended plan.

■ Next, both the Trustee and Equity argue that the Court should not confirm the Debtor's plan because she has not committed all of her disposable income to the current plan in violation of § 1325(b)(2) and § 1325(a)(3). In her amended Schedules, the Debtor apportions non-luxury expenses at the ratio of 40% to herself and 60% to her spouse, per the Court's Opinion, and deletes the luxury items from the Schedules altogether. However, this change only increased the payments under the plan by $67.13 per month, while the second amended Schedules I and J show the Debtor's family has excess income over budgeted expenses of $2,714.00 per month.

■ Moreover, from the Debtor's testimony adduced on August 18, 2000, it appears that a number of the luxury expense items found objectionable by the Trustee and Equity, as noted in the Court's prior Opinion, are continuing, though being paid by the non-debtor spouse, such as housekeeping, laundry and dry cleaning expenses, and various personal expenses for the minor children. Thus, at least in part, the Debtor is still directly or indirectly enjoying the benefits of such luxury expenditures even though they are being paid for by her spouse. While he cannot be forced to contribute his excess income over his share of the family expenses because the disposable income requirement of § 1325(b) is really directed at the Debtor's disposable income, it is not sufficient, for purposes of the good faith plan requirement of § 1325(a)(3), for the Debtor to continue to reap the benefits of her spouse's largess and only propose a plan with such a small dividend to her unsecured pre-petition creditors, who would otherwise, absent her ongoing dispute with Equity, be able to recover complete satisfaction of their claims against both or either the Debtor or her spouse.

■ The Debtor must satisfy both the plan good faith requirement of § 1325(a)(3) and the disposable income requirement of § 1325(b)(2), not merely the latter at the expense of the former. Moreover, it is for the Debtor to show that she has met both these burdens, not for the opposing parties or the Court to set or prescribe the amount of her disposable income. To paraphrase Judge DeGunther in *In re McKillips,* 81 B.R. 454, 459 (Bankr.N.D.Ill.1987), it is not the raison d'etre of the Court to

compute the amount of disposable income any more than the amount of adequate protection required for secured creditors under 11 U.S.C. §§ 361 and 362(d). Rather, the Court should limit itself to determine whether the Debtor's proposed plan submits all of her disposable income for at least three years as § 1325(b) mandates.

The Court finds that the Debtor is not committing all of her disposable income to fund the plan. Upon review of the Debtor's second amended Schedules I and J, the Court finds that the expenses contained therein are almost identical to those contained in the first budget. The Court finds that the Debtor has not made a good faith attempt to reduce her expenses to comply with the Court's Opinion. The Court previously stated in its Opinion that the Debtor was engaging in "a flagrant manipulation of the disposable income requirement by shifting many of those luxury expenses to the Debtor's spouse, especially where the Debtor directly enjoys the benefit of many of the luxury expenses." 249 B.R. at 171. The Court finds that the third amended plan and second amended Schedules I and J take this manipulation a step further by simply deleting reference to some of the luxury expenses altogether. The Debtor's testimony at trial indicated, however, that her spouse was continuing to make payments on the various debts, leaving the Court with the impression that the Debtor has not significantly altered her lifestyle.

The Court finds that the Debtor's amended Schedules and her testimony at the August 18, 2000 confirmation hearing are inconsistent. The luxury expenses that the Court referenced in its earlier Opinion-$3,720.00 for music lessons, recreation at $8,628.00, manicures at $720.00, hairdresser at $2,220.00 and a housekeeper at $1,680.00–were removed from the second amended Schedule J, although the Debtor testified that she still has a housekeeper and her daughter still receives manicures, all paid by the Debtor's spouse.

Thus, the Court concludes that the third amended plan does not meet the plan good faith requirement of § 1325(a)(3) because the Debtor continues to live an opulent lifestyle while paying a relatively small dividend to her unsecured creditors. The Court will not confirm this plan because the Debtor has not complied with the Court's Opinion or with § 1325(b)(2) or § 1325(a)(3).

Moreover, the Debtor's testimony does not support her argument of segregated income and expenses between her and her spouse or that the budgeted monthly expenses are reasonably accurate. The Court previously rejected the Debtor's argument that she is a separate operating economic unit. *McNichols*, 249 B.R. at 170. At the confirmation hearing, the Debtor testified that an $80.00 charge for her daughter's manicures and expenses from camp, for approximately $137.00, were paid from her checking account when she allowed her daughter to use her debit card. *See* Trustee's Exhibit Nos. 1 and 2. The Court finds this testimony inconsistent with her claim of segregated expenses allegedly paid by her spouse.

Most bothersome to the Court is the Debtor's failure to schedule the continuing approximate $850.00 aggregate monthly 401(k) payroll deduction. Neither on the Debtor's original nor her amended Schedules I or J was there any disclosure that the Debtor's pay from her current employer was actually reduced for any 401(k) plan contributions of $425.00 per pay period. *See* Debtor's Exhibit No. 2. Rather, in marked contrast, the original and amended Schedule I show only deductions from her gross pay for withheld payroll taxes, social security taxes, insurance and medical reimbursement plans in which she participated. Nowhere was the $850.00 monthly deduction for a 401(k) retirement plan contribution disclosed on the Schedules.

The Debtor's argument that this was disclosed in her prior testimony on January 18, 2000, in connection with the second amended plan, is not convincing because

her original Schedule J only referenced her 401(k) plan secured loan repayment at a monthly figure of $824.00 to which the Court assumed she was then referring. At no time prior to the Debtor's testimony on August 18, 2000, was the Court aware that her gross salary was being further reduced by her ongoing voluntary contributions to that plan in an additional sum of $850.00 per month. This failure to show on the Schedules both the ongoing 401(k) plan contribution, plus the 401(k) loan repayment, both confused the Court and distorted the true picture of the Debtor's income and expense statement.

Accordingly, the Court declines the Debtor's request to allow yet a further opportunity to propose, file and serve any further iteration of a plan predicated on the Debtor's claimed disposable income, which she has misstated and distorted in this substantial and material way. Enough is enough. Four attempts to obtain a facially confirmable plan in over one year in a single case is ample opportunity.

■ The Court holds that the Debtor's failure to disclose the very substantial $850.00 monthly 401(k) payroll deduction since the beginning of this case constitutes grounds for denial of confirmation of her third amended plan, as well as dismissal of her bankruptcy case. Debtor's Exhibit No. 2 shows year to date aggregate deductions for year 2000 (not including postpetition deductions for same in 1999) in the sum of $6,767.31 for the payroll period ending August 11, 2000, the week prior to trial. This is a serious and material matter not previously disclosed to the Court.

■ Thus, the Court concludes that the Debtor's original and amended Schedules I and J are inaccurate and not truthful or credible and have successfully been impeached through documentary evidence consisting of the Debtor's own pay stub, which shows the regular and ongoing contributions. *See* Debtor's Exhibit No. 2. The Court will not condone nor overlook the filing of false, inaccurate and mislead-

ing Schedules. *See, e.g., Britton Motor Serv., Inc. v. Krich (In re Krich),* 97 B.R. 919 (Bankr.N.D.Ill.1988) (debtor's omissions of assets from schedules and failure to properly amend constituted knowing and fraudulent conduct warranting the denial of discharge); *Soft Sheen Prods., Inc. v. Johnson (In re Johnson),* 98 B.R. 359 (Bankr.N.D.Ill.1988) (same); *Netherton v. Baker (In re Baker),* 205 B.R. 125 (Bankr. N.D.Ill.1997) (same).

■ The importance of a debtor's actual income and expenses in Chapter 13 cases cannot be overstated. The Court wholly agrees that "[p]robably the most important papers that are filed by a debtor in a Chapter 13 case are Schedules I and J, on which the current income and current expenditures of the debtor(s) are listed." 5 W. Norton, Jr., *Norton Bankruptcy Law and Practice 2d* § 116:3 at 116–10 (1997 ed.). In a Chapter 13 case, it is imperative that a debtor's Schedules I and J be reasonably accurate. The court, the trustee and the creditors must evaluate a debtor's ability to both propose and effectuate a confirmable plan based on the truthfulness and accuracy of the disclosures made in these documents. Under 11 U.S.C. § 521, a debtor is required, among other duties, to file schedules of assets and liabilities. The obligation is strict and the law requires such schedules to be as reasonably complete and accurate as possible. A paramount duty of the debtor is the duty to file a list of creditors, schedules of assets, liabilities, income and expenditures, and a statement of financial affairs. *See In re Park,* 246 B.R. 837, 842 (Bankr. E.D.Tex.2000). Failure to comply with § 521(1) can preclude confirmation of a Chapter 13 plan under the good faith standard of § 1325(a). *In re Green,* 141 B.R. 440, 442 (Bankr.M.D.Fla.1992).

The Debtor argues that the failure to schedule the 401(k) payroll deductions actually increased the amount of "excess income" shown on Schedule J, Line C and the amount being paid to the Trustee on Line D under the plan. According to the

Debtor, the failure to schedule the payroll deductions, instead of being done in bad faith to defraud creditors, was done in good faith to avoid the charge that the Debtor had understated her disposable income as computed on Schedules I and J. Non-disclosure of a substantial item like ongoing post-petition retirement plan contributions, which constitute disposable income, is hardly the way to convince the Court that all of the Debtor's disposable income is being contributed to the plan as required by § 1325(b) and several persuasive opinions with which this Court agrees. *See In re Hansen,* 244 B.R. 799 (Bankr. N.D.Ill.2000) (Lefkow, J.); *In re Schnabel,* 153 B.R. 809 (Bankr.N.D.Ill.1993) (Katz, J.).

■ The now apparent fact remains that the Debtor has been contributing to her 401(k) plan as well as repaying a secured loan to that plan throughout the pendency of this case, via payroll deductions, but never revealed this ongoing contribution to the Court or her creditors in her original or amended Schedule I. The Debtor's specious argument that the income being utilized to fund the 401(k) account is not income, but rather, an "asset transfer" does not excuse the Debtor's blatant omission in her Schedule I of this regular deduction from her gross pay. Further, the Debtor's argument that she disclosed this information at the first confirmation hearing in January 2000, does not excuse the fact that her Schedules are inaccurate. Moreover, the testimony on that point was unclear at that time. As a result of the Debtor's various Schedules, the Court was left with the definite impression, per the *Hansen* and *Schnabel* cases, that any 401(k) contributions had ceased while the plan loan repayments were being made. To the contrary, however, the 401(k) contributions continued unabated and were only disclosed clearly at the August 18, 2000 hearing. The Court will not condone the filing of false or misleading Schedules or the failure to disclose all income and deductions therefrom.

This not only impacts on the disposable income under § 1325(b), but also the plan good faith requirement of § 1325(a)(3). The Court finds that this omission also demonstrates that the Debtor's third amended plan is not proposed in good faith.

**B.** *Whether the Debtor's Plan Has Been Proposed in Good Faith*

■ Regarding the good faith inquiry into the filing of the Chapter 13 plan, the Court looks at the totality of the circumstances. *In re Love,* 957 F.2d 1350, 1355 (7th Cir.1992); *In re Schaitz,* 913 F.2d 452, 453–56 (7th Cir.1990); *In re Smith,* 848 F.2d 813, 816–22 (7th Cir.1988); *Rimgale,* 669 F.2d at 431–33. In its Opinion, the Court cited several factors that must be examined when determining if a Chapter 13 plan was filed in good faith. *McNichols,* 249 B.R. at 181 (citing *Love,* 957 F.2d at 1357). In addition, *Rimgale* sets forth a list of non-exclusive factors to determine good faith under § 1325. Those factors include: (1) does the proposed plan state secured and unsecured debts accurately?; (2) does it state expenses accurately?; (3) is the percentage of repayment of unsecured claims correct?; (4) if there are deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court?; and (5) do the proposed payments indicate a fundamental fairness in dealing with one's creditors? *Id.* at 432–33. The totality of the evidence convinces the Court that the Debtor's plan at bar passes factors one and three, but not two, four or five.

The Court concludes that based upon a review of these factors, the Debtor has not proposed this plan in good faith. Initially, the Court notes that the Debtor has disclosed and scheduled all of her creditors. Unfortunately, however, the Debtor's Schedules, even as amended, do not state the expenses accurately or who actually is paying what bills. As the Court previously discussed, the Debtor's testimony from both confirmation hearings does not sup-

port the proposed segregation of expenses between her and her spouse. Moreover, the Debtor's testimony does not support the accuracy of all of the amounts of those expenses listed on the Schedules. The Debtor's failure to disclose to the Court that she has been contributing to her 401(k) plan throughout this case is a most blatant attempt to mislead the Court, the Trustee and the creditors. Further, the Debtor testified that she has made payments for luxury items for camp expenses and manicures for her daughter in direct contravention of her Schedules. The deleted luxury expenses from the Debtor's second amended Schedules I and J are still being enjoyed by the Debtor and her family to some extent, and the allocation of expenses between the spouses varies from the filed budget. The variances between the filed budgetary line items and who is paying what items to maintain the Debtor's lifestyle, as evidenced by her testimony and her bank statements, further demonstrates that the Debtor has actually misled this Court. Because of the Debtor's repeated failure to clear up the inaccuracies, after the various filed amendments to the plan and Schedules, the Court concludes that the Debtor's actions have been intended to mislead.

Furthermore, the proposed payments in the plan do not indicate a fundamental fairness in dealing with the Debtor's creditors. The history of the plans proposed by the Debtor demonstrates her lack of fairness in dealing with some of her creditors, particularly Equity. The original plan proposed a monthly payment to the Trustee of only $18.45 for thirty-six months. This would have amounted to a distribution to creditors and fees to the Trustee in the total amount of $664.20, with no payments to Equity. The second amended plan provided for no payments to Equity until the final month of the plan. The third amended plan provides for a 9% interest only payment to Equity over the term of the plan, with the balance to be paid at the conclusion of all appeals, which could easily occur after the term of the

plan. The Court finds that the Debtor has gone to great lengths to avoid paying Equity's judgment and partially secured claim. The Debtor's treatment of Equity's claim over the various plan versions demonstrates that the Debtor lacks a fundamental fairness in dealing with Equity.

Also, the Debtor again proposes to pay co-signed unsecured debts at a higher rate than general unsecured creditors even though the Court indicated in its Opinion that the co-signer spouse could afford to pay his share of the co-signed debt. The Debtor continues to live an unchanged lifestyle while proposing to pay a mere 10% to her general unsecured creditors.

Additionally, the Court finds Equity's treatment under the plan at bar unfairly discriminatory. The plan proposes to pay Equity out of the Debtor's exempt retirement funds. The Debtor contends that the money to be paid to Equity is being held in United States Treasury instruments in the Debtor's IRA account. The Court stated in its Opinion that the Debtor has failed to "demonstrate with any certainty that those funds will be there and available at that point in time." 249 B.R. at 180. That situation still exists. Without withdrawing the funds from the exempt IRA account and depositing them either with the Trustee or in a segregated escrow account, there is no way to guarantee that the money will be available when the time to pay Equity's claim arrives or that the Debtor will not voluntarily dismiss the case under 11 U.S.C. § 1307(b), prior to any significant distributions to Equity on its allowed secured claim. The Debtor has not established a reasonable likelihood that she will be able to perform her obligations under the plan pursuant to § 1325(a)(6). Thus, for this reason, confirmation of the plan is denied.

Further in its Opinion, the Court found the Debtor's second amended plan to be convoluted, prolix and confusing to apply. *McNichols*, 249 B.R. at 177. The Court even suggested that the Debtor utilize the

Model Form Chapter 13 Plan. *Id.* For whatever reason, however, the Debtor disregarded the Court's suggestion and proposed another plan that is similarly confusing for the Trustee to attempt to administer. As a result, the Court will not confirm this plan.

### C. *The Motions to Dismiss*

Pursuant to 11 U.S.C. § 1307(c), the Court has the power to dismiss a bankruptcy case for cause. Section 1307(c) provides in relevant part:

> (c) Except as provided in subsection (e) of this section, *on request of a party in interest* or the United States trustee and *after notice and a hearing, the court may* convert a case under this chapter to a case under chapter 7 of this title, or may *dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—*
>
> (5) *denial of confirmation of a plan under section 1325 of this title....*

11 U.S.C. § 1307(c)(5) (emphasis supplied). These listed "causes" are not exhaustive, nor is the Court limited to this list. *See Ekeke v. United States,* 133 B.R. 450, 452 (S.D.Ill.1991). Although Chapter 13 does not contain a good faith requirement with respect to the filing of a Chapter 13 petition, the Seventh Circuit has determined that the absence of good faith is grounds for dismissal. *Love,* 957 F.2d at 1354. In the Seventh Circuit, bankruptcy courts must look at the totality of the circumstances, including several factors when determining if a Chapter 13 petition and/or plan was filed in good faith: (1) the nature of the proceedings; (2) the timing of the petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and (7) whether the debtor was forthcoming with the bankruptcy court and the creditors. *Id.* at 1357. "Because dismissal is harsh we agree that the bankruptcy court

should be more reluctant to dismiss a petition under Section 1307(c) for lack of good faith than to reject a plan for lack of good faith under Section 1325(a)." *Id.* at 1356.

Applying all of these factors to the instant case, the Court finds that the totality of the evidence and circumstances demonstrates grounds to dismiss the Debtor's Chapter 13 case. Denial of confirmation of the third amended plan, when coupled with the false, misleading and inaccurate Schedules I and J, further warrants the dismissal of the bankruptcy case. The Debtor has had ample opportunity to propose a facially confirmable plan to fairly deal with all of her creditors' claims, including Equity. The Court finds that the Debtor's Chapter 13 plans have not been filed in good faith. The Debtor has been less than candid and her credibility has been convincingly impeached. The appropriate action to be taken at this stage is the dismissal of the bankruptcy case under § 1307(c)(5).

Next, the Court will address whether the Debtor should be barred from refiling and whether the dismissal of the case should be with prejudice. Pursuant to 11 U.S.C. § 349(a), the Court has the discretion to dismiss the case with prejudice. Section 349(a) provides:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a). As Judge DeGunther aptly noted in *In re Lerch,* 85 B.R. 491, 494 n. 2 (Bankr.N.D.Ill.1988), *aff'd,* 94 B.R. 998 (N.D.Ill.1989), 11 U.S.C. § 109(g)(1) only touches the tip of the "abuseberg." In the decision affirming *Lerch,* Judge Roszkowski found that § 349(a) clearly affords a bankruptcy court the discretionary power to determine whether there is

"cause" for a dismissal with prejudice. 94 B.R. at 1002. Further, the bankruptcy court can use its own factors to determine what may constitute "cause." *Id. Lerch* permits the Court, in its discretion, to prohibit the filing of any bankruptcy case beyond the 180 day limit of § 109(g). *See also In re Dilley,* 125 B.R. 189, 197–98 (Bankr.N.D.Ohio 1991); *Shearson Lehman Hutton Mortgage Corp. v. Hundley (In re Hundley),* 103 B.R. 768, 771 (Bankr. E.D.Va.1989). The Ninth Circuit has held that bad faith is "cause" for dismissal of a Chapter 13 case with prejudice under § 349(a) and § 1307(c). *In re Leavitt,* 171 F.3d 1219, 1224 (9th Cir.1999). A dismissal with prejudice bars further bankruptcy proceedings and is a complete adjudication of the issues. *Id.* (citing *In re Tomlin,* 105 F.3d 933, 936–37 (4th Cir.1997)).

The Court holds that under the totality of the circumstances in the case at bar, dismissal with prejudice is in order. The Debtor's attempt to mislead the Court, the Trustee and her creditors constitutes "cause" sufficient to warrant a dismissal of the case with prejudice. Hence, the instant case is dismissed with prejudice and the Debtor is prohibited from filing another bankruptcy case in any chapter for a period of one year from the date this Opinion and Order are docketed.

### D. *Equity's Motion for Adequate Protection*

Because the Court will dismiss the case with prejudice, Equity's motion for adequate protection is moot and thus the Court need not further address it.

### IV. *CONCLUSION*

For the foregoing reasons, the Court sustains, in part, the objections of the Trustee and Equity to the Debtor's third amended plan and denies confirmation. In addition, the Court grants the motions to dismiss the bankruptcy case with prejudice. The Debtor is barred from filing another bankruptcy case for one year under § 1307(c)(5) and § 349(a). Finally, Equity's motion for adequate protection is moot as a result of the dismissal of the bankruptcy case.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

### ORDER

For the reasons set forth in a Memorandum Opinion dated the 26th day of October, 2000, the Court sustains, in part, the objections of Equity Insurance Managers, LLC ("Equity") and Glenn Stearns, the Chapter 13 Standing Trustee (the "Trustee") to confirmation of the third amended plan of Mary Kay McNichols (the "Debtor") and denies confirmation. In addition, the Court grants the motions of Equity and the Trustee to dismiss the bankruptcy case with prejudice under 11 U.S.C. § 1307(c)(5) and 11 U.S.C. § 349(a). The Debtor is barred from filing another bankruptcy case for one year. Finally, Equity's motion for adequate protection is moot as a result of the dismissal of the bankruptcy case.