**In the Matter of KENNETH LEVENTHAL & COMPANY, Appellant.**

**No. 93–2033.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1993.

Decided March 23, 1994.

Neal L. Wolf (argued), Barbara J. Wang, Philip M. Pinc, Winston & Strawn, Chicago, IL, for appellant.

Daniel J. Donnelly (argued), Steven F. Pflaum, McDermott, Will & Emery, Chicago, IL, for appellee.

Before ESCHBACH, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

Kenneth Leventhal & Company ("Leventhal"), an accounting firm, was hired by the unsecured creditors of Spurgeon Holding Corporation, Inc., a debtor in bankruptcy, to perform professional services in the bankruptcy. When Leventhal finished providing the services, it applied to the bankruptcy court seeking $229,694 in compensation for fees and $9,452 in reimbursement of expenses. After an evidentiary hearing, the bankruptcy court determined that certain of the claimed fees and expenses were unreasonable and reduced them, awarding fees in the amount of $133,294.50 and expenses in the amount of $2,949. Leventhal appealed and the district court affirmed. Leventhal now appeals to this court, and we also affirm.

## I. Facts

On May 16, 1991, the unsecured creditors of Spurgeon Holding Corporation, Inc. (Spurgeon), then a debtor in a Chapter 11 bankruptcy case, filed an application in bankruptcy court to "employ Kenneth Leventhal & Company as accountants and consultants pursuant to Section 1103 of the Bankruptcy Code, 11 U.S.C. § 101–1330 ... and Bankruptcy Rule 2014." The application identified ten general accounting services which Leventhal would provide:

1. Analyze and evaluate the financial statements, business plans, periodic cash reports, cash flow projections and other financial reports of the debtor;

2. Analyze and evaluate the debtor's internal accounting and transaction control;

3. Analyze and evaluate any proposed business transaction of the debtor including the sale of various assets;

4. Assist the committee in evaluating proposed assumptions and/or rejections of the debtor's leases;

5. Investigate and report on the existence of possible preferential or other voidable transfers;

6. Assist the committee in its investigation of the acts, conduct, assets, liabilities, and financial condition of the debtor;

7. Assist the committee in evaluating any plan of reorganization prepared by the debtor or, in the event the committee deems such action appropriate, in the formulation of a creditor-initiated plan of reorganization;

8. Evaluate the tax implications of a planned reorganization;

9. Provide any necessary litigation support including expert testimony; and,

10. Perform such other services within its professional competence for or on behalf of the committee which may be necessary and appropriate to enable the committee to discharge its obligations to unsecured creditors and to the court.

In a short two-page order issued on May 20, 1991, the bankruptcy court fully approved the unsecured creditors' application to employ Leventhal.

Over the next seven months, Leventhal provided numerous accounting services. Its work pretty much came to an end on January 27, 1992, when the bankruptcy court approved Spurgeon's plan of reorganization. Within a month Leventhal filed an application in bankruptcy court, seeking reimbursement for $229,694 in fees and $9,452 in expenses it incurred working for the unsecured creditors. Leventhal supported this application by submitting to the court summaries of accountant time entries, separated by accountant rather than by project. This was in contravention of the general practice in the Northern District of Illinois, to submit time entries by project. *See In re Wildman,* 72 B.R. 700, 711 (Bankr.N.D.Ill.1987). Reorganized Spurgeon objected to Leventhal's application. The bankruptcy court asked Lev-

enthal, on two occasions, to amend its application to reflect time entries by project and accountant, rather than just by accountant. Leventhal refused to make the changes, claiming that the task would be too time-consuming and costly.

It fell upon Reorganized Spurgeon to properly organize Leventhal's numbers according to project. Michael Pechette, Reorganized Spurgeon's Vice President and General Counsel, pulled together a staff and they plunged into this tedious task. After much effort, they produced a document—with the help of Reorganized Spurgeon's computer system—which properly categorized Leventhal's time entries. Pechette filed this document and his working papers with the bankruptcy court. He also filed an affidavit in which he identified several specific flaws in Leventhal's application; he criticized Leventhal's duplication of effort, excessive conferencing, and assorted other abuses.

After reviewing these materials, the bankruptcy court issued a thirty-four-page report which identified hundreds of questionable billing entries in Leventhal's application. The report catalogued these questionable billing entries in eleven general categories, and subdivided these categories into different sections. Needless to say, the bankruptcy court was very clear about the billing entries it considered objectionable. The court was also clear about why it considered them objectionable; each category and its subsections provided a brief synopsis of what the court considered wrong with the associated billing entries.

The bankruptcy court then ordered an evidentiary hearing on Leventhal's fee application. It specifically solicited evidence on five matters, but also assured that "[i]f the parties believe that any other issues would be appropriate for evidence to be taken on, I will consider your position." Leventhal appeared at the hearing with three witnesses. The first witness represented one of the unsecured creditors who had hired Leventhal in the bankruptcy. He testified about the decision to hire an accounting firm, and to some extent about the breadth of responsibility given to Leventhal. The second witness was a partner with Ernst & Young in Chica-go. He testified about the rates accountants generally charge for doing accounting work. He also testified that accounting firms often double- and triple-staff assignments—because that can be the most efficient way to complete projects—and that site visits are often necessary in performing accounting work. The final witness was Leventhal's partner in charge of the Spurgeon bankruptcy; he testified generally about the reasonableness of Leventhal's fee application.

Leventhal also sought to introduce testimony at the hearing concerning the breadth of responsibility the unsecured creditors gave it throughout the bankruptcy. Apparently, Leventhal wanted to argue that because it was invited into the bankruptcy and given a broad authorization, it was entitled to allocate its accounting resources without limitation, and then gain reimbursement. The bankruptcy court consistently refused to hear this testimony. Evidently, the court determined that such an argument would not influence its assessment of the reasonableness of the fees and expenses.

After conducting the evidentiary hearing, the bankruptcy court entered an order in which it partially allowed and partially disallowed the reimbursement which Leventhal sought. In all, the bankruptcy court disallowed $82,567 in requested fees and $6,503 in requested expenses; the court found that these fees and expenses were unreasonable. Again, the court was very specific about the billing entries it deemed inappropriate. It issued its findings in a thirty-page report, which disallowed reimbursement for, among other reasons, insufficient description of services, unnecessary duplication, excessive intra-office conferences, improper staffing of projects by senior personnel, and performance of unnecessary services. The court also allowed full reimbursement for some items it questioned going into the evidentiary hearing. For instance, the court accepted the hourly rates charged by Leventhal professionals, and allowed full compensation for site visits.

Leventhal appealed to the district court, which affirmed the bankruptcy court's reduction of fees and expenses. 152 B.R. 511. In its order affirming the bankruptcy court, the

district court concisely described the argument which Leventhal had presented:

> [Leventhal] does not challenge the bankruptcy court's findings that various services and expenses were insufficiently described, duplicative, or unnecessarily staffed by several professionals. Instead, [Leventhal] contends that the bankruptcy court is precluded as a matter of law from reducing fees and expenses because accounting firms routinely are paid by clients for such duplication, inefficiency, and excess. As such, [Leventhal] claims that the bankruptcy court erroneously rejected the doctrine enunciated by the Seventh Circuit in *In the Matter of Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir.1992).

Leventhal now appeals to this court, making basically the same argument.

## II. Analysis

The Bankruptcy Code governs reimbursement of accounting fees in bankruptcy cases. 11 U.S.C. § 330. Generally the bankruptcy court "may award" an accounting firm which provides services in a bankruptcy case, "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." *Id.* Because the statute commits the decision to award fees and expenses to the discretion of the court, we review a bankruptcy court's reduction of fees and expenses under an abuse of discretion standard. *Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 422 (9th Cir.1983). If the court makes factual findings in deciding whether to award compensation or reimbursement, we review those findings under a clearly erroneous standard. *Id.; see also* Fed.R.Bankr.P. 8013. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

Leventhal had the burden to prove that it was entitled to the fees and expenses identified in its application. *In re Lindberg Prods., Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill. 1985). Leventhal went about meeting this burden in what seemed a risky and haphazard fashion. First, Leventhal essentially submitted a box full of numbers to the bankruptcy court; because the time entries were not separated by project, the application did not lend itself to reasoned analysis. *See In re Wildman*, 72 B.R. at 708–9. On two occasions, the bankruptcy court implored Leventhal to conform its application to the standards observed by the court, but Leventhal refused to do so. When Reorganized Spurgeon finally grouped the numbers according to project, it became apparent that Leventhal often double and triple-staffed assignments, and appeared to duplicate effort. There is nothing intrinsically wrong with redundancy in staffing and completing accounting projects. If not common, this is at least acceptable in the accounting profession for certain projects. But it must have been a problem for the bankruptcy court when Leventhal submitted its application in a format that obscured this redundancy. And it must have been more problematic that Leventhal was unwilling to revise its application format when the court asked it to do so. And it certainly lent credibility to Reorganized Spurgeon's claims of overbilling when the properly arranged revision of the application revealed the redundancy.

To its credit, the bankruptcy court did not proceed on a gut reaction. Rather, the bankruptcy court held an evidentiary hearing to assess the application. The only evidence Leventhal was not allowed to introduce at the hearing concerned the breadth of its authorization when it entered the bankruptcy. The court already knew that Leventhal was given a wide scope of responsibility. Indeed, the court had approved the unsecured creditors' application to employ Leventhal, and this application identified these broad responsibilities. *See supra* at 1175. The court was not concerned with the scope of Leventhal's authority; rather, the court was concerned only that certain specifically designated compensation and reimbursement requests were excessive and duplicative. After hearing evidence on the matter, the court made a factual finding that some of these compensation and reimbursement requests

were unreasonable, and reduced Leventhal's fees and expenses accordingly.

After reviewing this finding, we are not left with the definite and firm conviction that a mistake has been committed. The bankruptcy court made this finding after the tedium of reviewing every objectionable billing entry, informing Leventhal of its concerns, and holding an evidentiary hearing. Leventhal's most significant contribution to this process was its poorly organized application. The bankruptcy court certainly had good reason—based mostly on Pechette's affidavit—to find that certain of Leventhal's compensation and reimbursement requests were unreasonable. Because we conclude that the bankruptcy court did not clearly err in making this finding, we also conclude that the bankruptcy court did not abuse its discretion in reducing Leventhal's fees and expenses.

As the district court recognized, Leventhal is not really contending that the bankruptcy court made clearly erroneous findings. Rather, when its position is boiled down, Leventhal is actually contending that our decision in *In the Matter of Continental Ill. Sec. Litigation,* 962 F.2d 566 (7th Cir.1992), precluded the bankruptcy court from making the findings it made. That case dealt with the award of attorney's fees in a securities class action. The district judge significantly reduced the fees which the prevailing party sought. There was no "adversary presentation" or the like where the district court could have considered the fee request. *See id.* at 568. The district judge, among other things, slashed the fee award based on his personal view that the prevailing market rate for attorney's services was too high, and a lesser rate would adequately satisfy the attorneys.

■ This case, unlike *Continental,* was governed by 11 U.S.C. § 330, which permits professionals employed in a bankruptcy case to recover only "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." Accordingly, there are limits—measured by standards of reasonableness—to what a professional can demand in a bankruptcy case. As in all cases where reasonableness is an issue, it is up to the fact-finder to apply this standard. In the bankruptcy court, the bankruptcy judge is the fact-finder. It falls upon him to determine the reasonableness of fees and expenses. The bankruptcy judge made such findings in this case. In fact, the court made extensive and detailed findings dealing with all aspects of the time and expenses billed. We have already determined that those findings are not clearly erroneous.

Leventhal argues that *Continental* somehow curtails the bankruptcy court's ability to determine reasonableness. Essentially, Leventhal posits that once it makes its application for fees and expenses, its request is sacrosanct and beyond further scrutiny. But this is clearly not the standard. Again, the standard is reasonableness, and application of that standard is committed to the bankruptcy judge. *Continental* changed neither the standard observed in the bankruptcy court, nor the process by which it should be applied. Here, the bankruptcy judge was faithful to both the standard and the process; we defer to his view of the facts, and his decision to reduce Leventhal's fees and expenses.

### III.  Conclusion

The bankruptcy court did not clearly err in finding certain of Leventhal's claimed fees and expenses unreasonable. Therefore, the bankruptcy court did not abuse its discretion in limiting those fees and expenses. For the foregoing reasons, we AFFIRM.