In re Sheldon BOND, Debtor.

In re Leroy G. Huber, Janice
R. Huber, Debtors.

In re Bruce M. Hatfield, Rosemary
S. Hatfield, Debtors.

In re Douglas S. Epperson, Candy
S. Epperson, Debtors.

Nos. 97–74395, 98–70007,
95–72240, 98–73553.

United States Bankruptcy Court,
C.D. Illinois.

April 27, 2000.

Vicki A. Dempsey, Hannibal, MO, for Debtors.

John H. Germeraad, Petersburg, IL, trustee.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

These matters were remanded to this Court by the United States District Court for an elaboration of this Court's rationale in partially denying the Motions for Addi-

tional Attorney's Fees filed by Vicki A. Dempsey and Marcia L. Moellring in the above-captioned cases.

On February 16, 1999, Vicki A. Dempsey filed an unverified Motion for Additional Attorney's Fees in five separate bankruptcy cases, four of which are captioned above.[1] In each case, Ms. Dempsey provided the Court with an unverified itemization setting forth her time expended and services rendered, and in each case Ms. Dempsey calculated her fee by multiplying the hours expended by her hourly rate of $110. This Court scheduled a hearing on the Motions for March 31, 1999. Ms. Dempsey did not appear at the hearing; Ms. Moellring did appear. The Court asked Ms. Moellring what, if any, evidence she intended to present in support of the Motions for Additional Attorney's Fees. Ms. Moellring indicated that she had no evidence to present and that it was her intent to stand on the Motions as filed. The Court then took the matters under advisement.

On May 7, 1999, this Court issued its Orders and Opinions ("Opinions") in the above-captioned cases allowing Ms. Dempsey's requests for additional fees up to $1,000 in each of the four cases but denying the motions as to the remainder.[2] Ms. Dempsey had sought fees totaling $1,166 in the Epperson case, $1,210 in the Bond case, $1,276 in the Huber case, and $1,309 in the Hatfield case.

On May 14, 1999, Ms. Dempsey filed her notices of appeal, and on December 8, 1999, the United States District Court en-

---

1. Although the Motion for Additional Attorney's Fees in Case No. 95–72240 was filed by Ms. Dempsey, the fees at issue relate to services rendered by Marcia L. Moellring, a partner of Ms. Dempsey. This Court, like the District Court, will refer to the applicant in all five cases as Ms. Dempsey for ease of reference.

2. In the fifth case, Ms. Dempsey's requested fees did not exceed $1,000. Her Motion for Additional Attorney's Fees was allowed, and the Order allowing the Motion was not appealed.

tered its Order remanding these matters to the Bankruptcy Court for an elaboration and more detailed explanation as to why Ms. Dempsey's Motions for Additional Attorney's Fees were partially denied.

■ In all four cases subject to this appeal and remand, the rationale for denying the motions as to amounts in excess of $1,000 was the same. In its Opinions, this Court, citing well-established authority, held that the burden of proof to show entitlement to the fees requested is on the applicant. *See In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir.1994); *In re Price*, 143 B.R. 190, 192 (Bankr.N.D.Ill. 1992), *aff'd* 176 B.R. 807, *aff'd and remanded* 42 F.3d 1068 (7th Cir.1994); *In re Stoecker*, 114 B.R. 965, 969 (Bankr.N.D.Ill. 1990); *In re Thorn*, 192 B.R. 52, 55 (Bankr.N.D.N.Y.1995).

With respect to the actual time expended in the above-captioned cases, the Court gave Ms. Dempsey the opportunity to present evidence or testimony. She declined to do so. In ruling on the Motions for Additional Fees, the Court did not dissect each time entry on Ms. Dempsey's itemizations because the Court, again citing accepted precedent, held that reasonable time does not necessarily include all time actually expended. *See In re Chas. A. Stevens & Co.*, 105 B.R. 866, 870–71 (Bankr.N.D.Ill.1989). Rather, the Court, held that Ms. Dempsey had failed to meet her burden of proof that the facts and circumstances of each of the cases justified the amount of time billed.

■ This Court has found that the amount of time expended by an attorney on a case or a particular task is not always a good indicator of the reasonableness of a fee being sought. For example, most experienced Chapter 13 attorneys are able to avoid having to appear in court multiple times before a Chapter 13 plan is confirmed. Improperly prepared or incom-

plete schedules, an attorney's lack of preparation for the meeting of creditors, and an attorney's failure to understand how Chapter 13s are handled by the Trustee and the Court result in more time being expended on the confirmation process than is reasonable.

■ In addition, the amount of time an attorney spends on any type of matter depends to a large extent on that attorney's ability to delegate duties to members of his or her staff. The use of computers and para-professionals have significantly reduced the amount of attorney time required to complete a Chapter 13 case. Any duty which does not require the knowledge or skill of an attorney should be performed by a non-attorney. It is unreasonable for an attorney to bill his or her time at his or her normal hourly rate for tasks which can and should be performed by a secretary or paralegal. *See In re Wildman*, 72 B.R. 700, 727 (Bankr.N.D.Ill. 1987). As an example, it should not require a significant amount of attorney time to prepare the bankruptcy schedules. The attorney should supervise the preparation, not do the keyboarding. If the attorney does the keyboarding, he or she should not request fees in excess of those which would be charged for the services of a paralegal or secretary. An experienced Chapter 13 attorney with a competent staff needs no more than three or four hours of actual attorney time, in addition to, perhaps, several hours of staff time, to complete a typical Chapter 13 case. Given the allowance of fees of $1,000 in each case, this would result in an effective rate in excess of $200 per hour.

With respect to her hourly rate, the Court did not accept (nor did it expressly reject) Ms. Dempsey's contention that her hourly rate of $110 was reasonable. Rather, the Court noted that it was aware of

experienced Chapter 13 bankruptcy attorneys practicing in the Quincy area whose hourly rate is in the $90 to $100 per hour range. More importantly, the Court also noted that Ms. Dempsey, though given the opportunity to do so, had offered no evidence to support her assertion that her hourly rate was reasonable. Again, finding that the burden of proof clearly rests on the applicant, the Court declined to find Ms. Dempsey's hourly rate to be reasonable.

Beyond the reasonableness of the time expended and the hourly rate, this Court noted that, on December 22, 1998, the United States District Court for the Central District of Illinois adopted a new policy regarding the review level for attorney's fees in Chapter 13 bankruptcy cases, raising the review level from $800 to $1,000. *See In re Kindhart et al.,* Case Nos. 97–3311, 97–3312, 97–3313 (C.D. Ill. Dec. 22, 1998 Mills, J.). This Court went on to apply the factors set forth in the landmark case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) and to find that the four above-captioned Chapter 13 cases were among the:

> more simple and straightforward that the Court and Ms. Dempsey (or Ms. Moellring) have seen. There was nothing difficult or unusual about it. There were no novel or difficult questions raised and the confirmation process was a smooth one. In addition, there has been nothing which has occurred post-confirmation to merit a higher fee. There is no evidence that Ms. Dempsey (or Ms. Moellring) was precluded from other more lucrative employment, nor were there any special time limits imposed by the Debtors or their circumstances. Ms. Dempsey (or Ms. Moellring) are adequately experienced and able to represent the Debtors, and this case is no more undesirable than any

other Chapter 13 case. Finally, so far as the Court knows, there was nothing unusual about the nature or length of Ms. Dempsey's (or Ms. Moellring's) professional relationship with the Debtor.

Opinions *at* pp. 6–7.

■ During the *Kindhart* proceedings, the United States District Court for the Central District of Illinois adopted a policy regarding the "review level" for attorney's fees in Chapter 13 bankruptcy cases. It is this Court's understanding that the implementation of a "review level" means that, in cases which the Bankruptcy Court finds to be typical, uncomplicated Chapter 13 cases with smooth confirmation processes and no novel issues, no difficult questions, and few if any additional complications, the threshold $1,000 fee is and should be deemed presumptively reasonable. Of course, an applicant is always free to seek a fee higher than the "review level", but that applicant must show specifically how and why a case merits a fee in excess of the $1,000 threshold. *See In re Geraci,* 138 F.3d 314, 321 (7th Cir.1998).

One of the purposes of setting the $1,000 threshold for routine Chapter 13 cases was to save the attorney and the Court time when dealing with the large volume of cases which are simple, straightforward, routine, and contain no new issues of law. Under this system, the Court, its staff, the standing Trustee, and the U.S. Trustee are not required to review every petition for fees, but may assume the amounts of fees paid are reasonable and fair. This system also shows appropriate concern for the interests of the unsecured creditors whose interests are affected because attorney fees affect the dividend paid to them in the Chapter 13 plan.

This system is beneficial to the attorney as well. The attorney is not required to file an application to be hired and is not

required to keep time records. Admittedly, because each set of facts is different, the attorney will make a bit more profit in some cases than in others. In fact, there may be a rare occasion when the attorney is not fairly compensated. However, overall, the fee structure should make the vast majority of cases profitable. On those rare occasions when this is not the case, the attorney is always free to file a motion for additional fees and a complete fee application.

One disadvantage of having a threshold fee is that, as in the cases before the Court, the threshold fee becomes the minimum fee. Chapter 13 debtors are required to devote their income in excess of reasonable monthly expenses to their Chapter 13 plan. Once this amount is determined, it then becomes the fixed monthly payment devoted to funding the Chapter 13 plan. Consequently, the debtor normally no longer has a financial interest in these funds or in how they are distributed. The trustee's statutory fee is determined as a percentage of the amount paid into the plan, and that fee is not affected by the attorney's fee. Accordingly, there is no incentive to the attorney or to the trustee to limit or restrict the attorney's fee and, as a result, the highest allowable fee is almost always requested. In actuality, it is the unsecured creditors who bear the brunt of this system because it is their dividend which is adversely affected by higher attorney fees. Because the dividend being paid to most unsecured creditors is modest, the system is not set up to encourage unsecured creditors to contest applications for fees. Thus, the only protection afforded to the interests of unsecured creditors must come from the Court.

In the Springfield division of the Central District of Illinois, there were 253 Chapter 13 cases filed in 1999. During the *Kind-*

*hart* proceedings, the Court heard from five Chapter 13 bankruptcy attorneys who are responsible for 108 of the 253 Chapter 13 cases filed in 1999. These attorneys were clear that they do not have a problem with the fees awarded in this division, nor, apparently, do any of the other 51 attorneys who filed Chapter 13 cases in 1999.

Ms. Dempsey filed 16 Chapter 13 cases in 1999, and she is the only attorney who is constantly concerned that Chapter 13 bankruptcy attorneys are undercompensated in this division. This Court has reached the inescapable conclusions that Ms. Dempsey's difficulty lies with her inefficiency and that her net earnings would increase in Chapter 13 cases if she were able to remedy that problem.

As stated above, to satisfy the burden of proving reasonableness, a fee applicant must establish that the time expended and the hourly rate are reasonable. It is not, in this Court's estimation, sufficient for an attorney to present the Court with an unverified motion seeking additional fees supported by no evidence or testimony regarding the reasonableness of the time expended or the hourly rate. In the four cases at issue, this Court reached its conclusions regarding the reasonableness of requested fees having the benefit of the complete court record. The Court reviewed the entire case file in each case, presided over each of the hearings, evaluated the value and necessity of Debtors' counsel's role at each step, and is very familiar with the amount of time and effort required by competent debtors' counsel to complete the tasks required by each case. This Court has not and will not ever intentionally deny fees to any professional coming before it for approval of fees when the Court is able to find justification for the request. However, a professional must affirmatively prove his or her entitlement to extraordinary fees in a run-of-the mill

case; the Court cannot and should not presume entitlement without any evidence of reasonableness.

Thus, this Court's rulings in the above-captioned cases are based primarily on (i) its understanding of the mandate in *Kindhart* and the "review level" for fees in routine Chapter 13 cases, and (ii) the case law which places the burden of proof in these matters squarely upon the applicant. The Court is not attempting to "sidestep" the direction of the District Court on remand. However, the law is clear that the burden of proving that the attorney fee requested by an applicant is reasonable rests on the applicant. In this case, Ms. Dempsey did not appear at the hearing on her Motions for Additional Attorney's Fees. Instead, she was represented by Ms. Moellring, who presented no evidence.

Ms. Dempsey stated in her brief to the District Court that no transcript of the March 31, 1999, hearing was available. Ms. Dempsey is incorrect. The transcript was obtained by the Court from the official court reporter, and a copy of that transcript is attached to this Opinion. The transcript shows that Ms. Dempsey chose not to appear at the hearing. When the Court inquired as to whether Ms. Dempsey intended to present any evidence in support of her Motions, Ms. Moellring stated that she did not. In fact, Ms. Moellring said that she would rely solely upon the *Kindhart* decision.

Surely the District Court can appreciate the dilemma presented to the Bankruptcy Court. The applicant submitted an unverified motion for fees, to which a statement of time expended was attached. A hearing was scheduled, and the applicant failed to appear in person. At that point, the Court could not question the applicant about the time expended or about the reasonableness of the services rendered or whether they were necessary and beneficial to the es-

tate. This Court cannot believe that, by failing to appear at a scheduled hearing, the applicant has successfully shifted the burden to the Bankruptcy Court to prove that the requested fees are unreasonable. Yet, based upon comments by her counsel at the hearing, Ms. Dempsey apparently takes the position that the *Kindhart* decision supports the premise that she should be awarded any fees for which she applies in the future without interference or questioning by the Court as to their reasonableness.

This Court's reading of the *Kindhart* cases is quite different. The Court of Appeals remanded the case to the District Court to raise the standard fee allowed in Chapter 13 proceedings in the Central District of Illinois. Upon consultation with the bankruptcy judges, that fee was set by the District Court at $1,000 per case, subject to review every two years.

At this point in the *Kindhart* proceeding, and for the sake of judicial economy, the Bankruptcy Court recommended to the District Court that Ms. Dempsey's fee applications be allowed in the amounts requested. By this point in time, there had been one hearing resulting in an opinion, one appeal to the District Court resulting in an opinion, a remand to the Bankruptcy Court resulting in an opinion, an appeal again to the District Court with a resulting opinion, an appeal to the Seventh Circuit with a resulting opinion, and a remand to the District Court, followed by an *en banc* meeting of the District Court and Bankruptcy Court with an additional opinion. Finally, the case went to the Seventh Circuit for final disposition.

This history of *Kindhart* and the amount of judicial resources consumed by it was the sole basis for this Court's recommendation that the fees be allowed in the amounts requested. It was this Court's hope that the allowance of these

fees (from funds which would otherwise be payable to the unsecured creditors) would make Ms. Dempsey feel it unnecessary to request additional fees for the appeals. At this point, thankfully, the matter was concluded.

After reviewing all of the orders and opinions in the *Kindhart* cases, this Court finds no statement approving the reasonableness of Ms. Dempsey's $110 hourly rate. In fact, to this day Ms. Dempsey has never offered evidence to the Court of what a reasonable hourly rate would be for her services. She has told the Court that she believes she is entitled to this hourly rate and that, on occasion, some judges in other courts have allowed her this rate. She has also stated that other attorneys often receive this hourly fee. However, she has never brought another attorney before the Court to state what a reasonable hourly rate is in the Quincy area or to testify that her specific hourly rate is reasonable. She has certainly never provided testimony from a colleague that her fees in any of the cases before this Court are reasonable based upon the services provided.

In these cases, the Court also notes that Ms. Dempsey has never filed an application to be hired by the estate as required by Section 330 of the Bankruptcy Code. She has only filed a statement of fees required by Bankruptcy Rule 2016. Of more concern, she has never sought authority of the Court to represent the estate post-confirmation. Technically, then, Ms. Dempsey should not be compensated for any services rendered post-confirmation.

In summary, Ms. Dempsey chose not to appear at the March 31, 1999, hearing. Instead, she placed her total reliance for the allowance of her Motions on the *Kindhart* decision. Under these circumstances, the Court did not have any evidence upon which to justify a deviation from the threshold $1,000 fee. Nothing in any of the cases was atypical; these were all routine Chapter 13 cases. There is nothing in Ms. Dempsey's itemization to indicate that the cases were unusual or that she did anything extraordinary to benefit the estate.

To this Court, it is clear that the only effect of *Kindhart* was to establish $1,000 as the threshold fee in Chapter 13 cases in the Central District of Illinois. It certainly does not outline how initial and subsequent fee applications are to be evaluated. Based upon the record and the precedent, the Court has done its best in adjudicating the Motions for Additional Attorney's Fees in these cases and has followed the letter and spirit of *Kindhart*. If this Court's rationale and/or conclusions are in error, perhaps the District Court could provide specific guidelines for evaluating similar fee applications in the future.