**In re Mary Kay McNICHOLS, Debtor.**

**No. 99–B–18053.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 11, 2001.

See also 249 B.R. 160, 255 B.R. 857.

Arthur G. Jaros, Jr., Richter & Jaros, Oak Brook, IL, for debtor.

Barry A. Chatz, Steven J. Christenholz, Mariam R Stein, Kamensky & Rubinstein, Lincolnwood, IL, Francis X. Buckley, Jr., Thompson Coburn, LLP, St. Louis, MO, for respondent.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the motion of Equity Insurance Managers, LLC ("Equity") for sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011 against Mary Kay McNichols (the "Debtor") and her counsel, Arthur G. Jaros, Jr. (the "Debtor's Counsel") and on the application of the Debtor's Counsel for an interim award of compensation. For the reasons set forth below, the Court denies Equity's motion for sanctions. The Court hereby awards the Debtor's Counsel $6,000.00 in interim compensation.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They

are core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. *FACTS AND BACKGROUND*

The Court issued a Memorandum Opinion wherein it denied confirmation of the Debtor's second amended plan of reorganization. *See In re McNichols,* 249 B.R. 160 (Bankr.N.D.Ill.2000). Thereafter, on October 26, 2000, the Court entered another Memorandum Opinion which denied confirmation of the Debtor's third amended plan of reorganization, dismissed the Chapter 13 case with prejudice, and barred the Debtor from filing another bankruptcy case for one year. *See In re McNichols,* 254 B.R. 422 (Bankr.N.D.Ill.2000). Subsequently, the Court denied the Debtor's motion to alter or amend that Memorandum Opinion. *See In re McNichols,* 255 B.R. 857 (Bankr.N.D.Ill.2000). Those Opinions contain the facts and background of this case and need not be repeated here.

On November 3, 2000, Equity filed its motion for sanctions against the Debtor and the Debtor's Counsel. Equity alleges that the Debtor filed and prosecuted the bankruptcy case in bad faith. Equity contends that the case was filed because the Debtor was seeking to avoid payment of a judgment entered in favor of Equity. Equity argues that instead of posting a supersedeas bond, the Debtor filed a Chapter 13 petition. According to Equity, the Debtor has repeatedly filed false and misleading Schedules and four unconfirmable, discriminatory Chapter 13 plans, which were not proposed in good faith. Equity contends that as a result of the actions of the Debtor and the Debtor's Counsel, the Standing Chapter 13 Trustee and Equity have spent large amounts of time and money. Equity requests that the Court deter future conduct of this nature by ordering the Debtor and the Debtor's Counsel to reimburse Equity for its attorneys' fees, expenses and costs in the sum of $35,701.11 ($31,999.75 in attorneys' fees and $3,701.36 in costs) as a result of the bad faith filing of the bankruptcy case.

Equity submitted an affidavit from Barry A. Chatz of the law firm of Kamensky & Rubinstein evidencing the time expended and the costs incurred.

The Debtor responds that each version of the plan she proposed was supported by existing law. Further, she argues that the Schedules were prepared in conformity with existing law and/or based upon a good faith understanding of what the existing law required. The Debtor contends that the Court's ruling that the Debtor and/or the Debtor's Counsel have not acted in good faith is contrary to the evidence.

In its reply to the Debtor's response, Equity, for the first time, invokes 11 U.S.C. § 105(a) and states that this section allows the Court to go beyond Rule 9011 if it deems necessary. Equity cites to *In re Collins,* 250 B.R. 645 (Bankr.N.D.Ill.2000) for the proposition that bankruptcy relief is not intended to allow the clever rich an opportunity to slip away from a single, disfavored creditor. Equity argues that the Debtor's filing of the bankruptcy case has been solely for the purpose of avoiding the necessity of posting a supersedeas bond or paying the judgment owed to Equity, both of which, according to Equity, the Debtor had the means to do. Equity contends that this is an improper purpose for which to file a bankruptcy petition. Equity maintains that the Court's findings that the Chapter 13 plans filed in this case were not proposed in good faith and that the Debtor and the Debtor's Counsel filed false, misleading and inaccurate Schedules support the conclusion that this bankruptcy filing was frivolous and a blatant abuse of the judicial process, which has been exacerbated by the refusal of the Debtor and the Debtor's Counsel to follow clear guidance from the Court as to how they must proceed to be in compliance with the Bankruptcy Code and Rules.

The Debtor further argues that Equity's motion for sanctions violates the safe-harbor provision of Rule 9011 because the Debtor was never afforded the opportunity to withdraw the offending pleading. The

Debtor argues that Equity violated this pre-condition to sanctions by serving the Debtor's Counsel with the motion for sanctions in open court on the day it was filed.

On October 26, 2000, the Debtor's Counsel filed an application for interim compensation. The Debtor's Counsel seeks interim compensation in the sum of $18,000.00 of the $50,000.00 in accrued services for legal work performed in this case and the state court appellate proceeding. The Debtor's Counsel has attached a summary of the 171.30 hours expended. The summary, however, does not indicate who in the law firm provided which services to the Debtor. The Debtor's Counsel states that all of the time provided was attorney time and none was paralegal or other staff time. Further, the Debtor's Counsel states that he felt it unnecessary, for purposes of the pending interim application, to break out the time between himself (who performed the bulk of the time expended) and associate attorneys. The Debtor's Counsel notes that because the application seeks only a partial award of $18,000.00, being far less than the total of the time expended, it was deemed unnecessary to present the same degree of detail.

Equity responds that the amount of time expended by the Debtor's Counsel on this case was unreasonable, unnecessary and provided no benefit to the Debtor or the estate. Equity contends that the Debtor and the Debtor's Counsel repeatedly filed false and misleading Schedules and four unconfirmable, discriminatory plans. Equity argues that these actions should not be rewarded.

The Court afforded the parties the opportunity for an evidentiary hearing, which they waived. Thus, the Court took the matter under advisement based on the filed papers.

## III. DISCUSSION

### A. Motion for Sanctions

■■■ Bankruptcy Rule 9011 is modeled after Federal Rule of Civil Procedure 11 and is "essentially identical" to Rule 11. *In re Park Place Assocs.*, 118 B.R. 613, 616 (Bankr.N.D.Ill.1990). Rule 11 was amended in 1993 to add certain notice requirements[1] and these same amendments were later made to Bankruptcy Rule 9011, effective in 1997. Thus, in applying the current version of Bankruptcy Rule 9011, courts frequently look to Rule 11 and the cases decided thereunder. *See In re Famisaran*, 224 B.R. 886, 894 (Bankr.N.D.Ill.1998). Some Rule 11 cases decided prior to the procedural amendment are still applicable today in analyzing Bankruptcy Rule 9011 because the substantive provisions were not altered. *See Collins*, 250 B.R. at 659; *State Bank of India v. Kaliana (In re Kaliana)*, 207 B.R. 597, 601 (Bankr.N.D.Ill.1997) (citations omitted).

■■■ The goal of the sanctions remedy provided under Bankruptcy Rule 9011 is to deter unnecessary filings, prevent the assertion of frivolous pleadings, and to require good faith filings. *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077–80 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). The Rule is not intended to function as a fee shifting statute which would require the losing party to pay costs. *Kaliana*, 207 B.R. at 601 (citing *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir.1989)). Thus, the Rule focuses on the conduct of the parties and not the

---

1. Rule 11 was amended in 1993 to broaden the obligations of the parties to refrain from conduct which frustrates the judicial process while also placing greater constraints on the imposition of sanctions. Fed.R.Civ.P. 11, Advisory Committee Notes, 1993 Amendments. To this end, the provisions of (c)(1)(A) were included to provide parties with notice and an opportunity for "curing" offensive pleadings before a remedy could be sought in court. Bankruptcy Rule 9011 was amended in 1997 in order to bring it in conformance with Rule 11's earlier 1993 revision. Commonly known as the "safe-harbor provision," this notice requirement is at issue in the instant matter and will be discussed hereinafter.

results of the litigation. Bankruptcy Rule 9011 provides in relevant part:

(a) SIGNATURE. Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name....

(b) REPRESENTATIONS TO THE COURT. *By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper,* an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) SANCTIONS. If, after notice and a reasonable opportunity to respond, *the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.*

(1) How Initiated.

(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. *The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b).* If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion....

. . .

(2) Nature of Sanction; Limitations. *A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.* Subject to the limitations in subparagraphs (A) and (B), *the sanction may consist of, or include,* directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, *an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.*

. . .

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of

this rule and explain the basis for the sanctions imposed.

Fed. R. Bankr.P. 9011 (emphasis supplied).

 Under Rule 11(c)(1)(A), "sanctions proceedings may be initiated in two ways, by motion or at the initiative of the trial court." *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir.1999). When sanctions are requested upon a party's motion, two requirements must be met: (1) the motion must be made separate and apart from other motions or requests and "[must] describe the specific conduct alleged to violate" representations to the court, and (2) "the motion may not be presented to the court unless, within twenty-one days of service, the non-movant has not withdrawn or corrected the challenged behavior." *Id.* A court that imposes sanctions by motion without adhering to the twenty-one day safe harbor abuses its discretion. *Id.* (citing *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 150–51 (7th Cir.1996)). The present version of Bankruptcy Rule 9011 provides that upon presenting in the manner of signing, filing, submitting or later advocating documents to the court, a party or their counsel represents that to the best of that person's knowledge, information and belief, formed after a reasonable inquiry under the circumstances, such document is not presented (1) for any improper purpose, (2) based upon frivolous legal arguments, (3) without adequate evidentiary support for its allegations, and (4) without a basis for denials of fact. These provisions essentially create two grounds for the impositions of sanctions: (1) the "frivolousness clause," which looks to whether a party or an attorney made a reasonable inquiry into both the facts and the law; and (2) the "improper purpose clause," which looks to whether a document was interposed for an illegitimate purpose such as delay, harassment, or increasing the costs of litigation. *Kaliana*, 207 B.R. at 601 (citations omitted).

 With respect to the "frivolousness clause," the relevant inquiry has two prongs: (1) whether the attorney made a reasonable inquiry into the facts and (2) whether the attorney made a reasonable investigation of the law. *Home Savs. Ass'n of Kansas City, F.A. v. Woodstock Assocs. I, Inc. (In re Woodstock Assocs. I, Inc.)*, 121 B.R. 238, 242 (Bankr.N.D.Ill. 1990) (citation omitted). In making the determination of whether a reasonable inquiry was made with respect to the facts of a case, courts must consider five factors: (1)whether the signer of the document had sufficient time for investigation; (2) the extent to which the attorney had to rely on his client for the factual foundation underlying the pleading; (3) whether the case was accepted from another attorney; (4) the complexity of the facts and the attorney's ability to perform a sufficient pre-filing investigation; and (5) whether discovery would have been beneficial to the development of the underlying facts. *Id.* In sum, the investigation of the facts must have been reasonable under the particular circumstances of the case. *In re Excello Press, Inc.*, 967 F.2d 1109, 1112–13 (7th Cir.1992).

 A pleading is well-grounded in fact if it has some reasonable basis in fact. *Woodstock*, 121 B.R. at 242 (citations omitted). On the other hand, a pleading is not well-grounded in fact if it is contradicted by uncontroverted evidence that was or should have been known by the attorney signing the document. *Id.* (citation omitted). Nonetheless, the Rule does not require investigation to the point of absolute certainty. *Kaliana*, 207 B.R. at 601 (citation omitted).

 It is not really clear from Equity's motion which of the Debtor's papers filed in this case specifically violated Rule 9011. Equity appears to argue that the Debtor's filing of the bankruptcy case itself is sanctionable because she did so in lieu of posting a supersedeas bond. The Ninth Circuit has held that where a debtor filed a Chapter 11 petition to delay collection of a state court judgment and avoid

posting an appeal bond, both of which she was able to pay, that action was sanctionable as "a transparent attempt to use a Chapter 11 petition and the resulting stay as an inexpensive substitute for the bond required under state law." *In re Marsch,* 36 F.3d 825, 831 (9th Cir.1994). This Court has never stated that this bankruptcy case was filed in bad faith or for the sole purpose of avoiding the posting of a supersedeas bond or paying the valid judgment owed to Equity.

Rather, as Equity notes in its motion, the Opinions issued in the Debtor's case opine that her various plans have not met the plan good faith requirement of 11 U.S.C. § 1325(a)(3). *See McNichols,* 249 B.R. at 181; *McNichols,* 254 B.R. at 433–34. As the Seventh Circuit made clear in *In re Love,* 957 F.2d 1350, 1355 (7th Cir. 1992), it is Equity's burden of proof to make the more difficult showing that the Debtor filed this case in bad faith. This heavier burden has not been met by Equity. It is undisputed that this is the Debtor's first case and she timely filed her Schedules and Statement of Affairs; she has timely made all plan payments to the Chapter 13 Standing Trustee under the various plan she had proposed; she has attended the scheduled meeting of creditors under 11 U.S.C. § 341; and she has appeared with counsel at every scheduled court hearing held in this case. Thus, the Debtor has diligently and timely prosecuted this matter and has attempted, unsuccessfully to obtain confirmation of a Chapter 13 plan. She does not fit the more typical pattern of the abusive filer who either fails to file all Schedules and answers to her Statement of Affairs; does not appear at scheduled creditors' meetings and/or court hearings; and fails to make the required proposed plan payments. These proscribed attributes of the abusive filer, per the *Love* case, are not present here.

■ This case was dismissed by the Court because the Debtor's 401(k) retirement plan contribution was not scheduled and therefore was effectively concealed from the Court, and the Debtor failed to propose a facially confirmable plan after several opportunities extending over a year's duration. *See McNichols,* 254 B.R. at 435. The Court previously found that the Debtor "seeks to reorganize her debts to all her creditors, rather than deal just with Equity alone-a much more complex and difficult process under the Bankruptcy Code." *See In re McNichols,* 249 B.R. at 181. The Court will not sanction the Debtor for the filing of the bankruptcy case. Moreover, while Equity does not state that the filing of the petition violated Rule 9011, Equity does argue that the filing of the case was in bad faith. Rule 9011 expressly excludes the filing of a bankruptcy petition from the safe-harbor provision. *See* Fed. R. Bankr.P. 9011(c)(1)(A). The Rule excludes the initial filing because "[t]he filing of a petition has immediate serious consequences, including the imposition of the automatic stay under § 362 of the Code, which may not be avoided by the subsequent withdrawal of the petition." Fed. R. Bankr.P. 9011 Advisory Committee Notes, 1997 Amendments.

■ The Court must deny Equity's motion for sanctions because it violated the safe-harbor provision contained in Rule 9011(c)(1)(A). The safe-harbor provision of Rule 9011 provides that the motion may not be filed with the court until at least twenty-one days after service of the motion on the offending party. "If, during this period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court." Fed.R.Civ.P. 11 Advisory Committee Notes, 1993 Amendments. The intention of the Rule is that counsel will give "informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion." *Id.* The safe-harbor provision is a mandatory procedural prerequisite and

sanctions imposed without compliance are improper. *See Elliott v. Tilton,* 64 F.3d 213, 216 (5th Cir.1995); *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328 (2d Cir. 1995); *In re VMS Sec. Litig.,* 156 F.R.D. 635, 641 (N.D.Ill.1994).

When Equity served the Debtor's Counsel with the motion in open court on the day the motion was filed, it failed to afford the Debtor the twenty-one day period to withdraw the allegedly offending papers- the various versions of the Chapter 13 plan and Schedules the Debtor had filed. This mistake is fatal to Equity's motion. Consequently, the Court hereby denies Equity's motion for sanctions pursuant to Rule 9011.

▬▬ Next, the Court will address Equity's request for sanctions against the Debtor and the Debtor's Counsel under 11 U.S.C. § 105. Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). "Section 105 grants broad powers to implement the provisions of Title 11 and to prevent an abuse of bankruptcy process." *In re Volpert,* 110 F.3d 494, 500 (7th Cir.1997). The plain language of § 105 empowers bankruptcy courts to sanction conduct that abuses the judicial process and vexatiously multiples bankruptcy proceedings. *Id.* (citing with approval and following *In re Rainbow Magazine,* 77 F.3d 278 (9th Cir.1996) in which the Ninth Circuit held that bankruptcy courts have authority under § 105 to impose sanctions for the bad faith filing of a bankruptcy petition). Section 105(a)

confers both statutory and inherent authority upon the bankruptcy courts. *In re Rimsat, Ltd.,* 212 F.3d 1039, 1049 (7th Cir.2000). Sanctions are justified under § 105(a) where the sanctioning court has clearly found that a litigant "intentionally abused the judicial process in an unreasonable and vexatious manner...." *Id.* at 1047. The Court may use its statutory authority under § 105(a) to sanction the Debtor and the Debtor's Counsel if it finds that they have abused the judicial process. *See Collins,* 250 B.R. at 656-57. When a bankruptcy filing is motivated by a desire to delay a creditor from enforcing its rights in an ongoing dispute, the filing is an abuse of process. *Id.* at 657 (citing *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.),* 40 F.3d 1084, 1085, 1090 (10th Cir.1994)).

▬▬ The Court denies Equity's request to sanction the Debtor and the Debtor's Counsel under § 105(a). Equity's motion did not seek sanctions against the Debtor and the Debtor's Counsel pursuant to this section. Rather, in its reply to the Debtor's response to the motion for sanctions, Equity, for the first time, sought relief under § 105(a). At this point in time, that request is too little, too late. The Court will not allow Equity to end-run the safe-harbor requirements of Rule 9011 by invoking § 105(a) as an alternative. That the Debtor's Schedules I and/or J failed to properly disclose to the Court the ongoing retirement plan contribution of almost $900.00 per month does not equate with causing Equity to incur $35,000.00 in attorneys' fees and expenses. Accordingly, the Court denies Equity's request for sanctions under § 105(a).

## B. *Application for Interim Compensation*

▬▬ The Debtor's Counsel seeks interim compensation in the sum of $18,000.00. Pursuant to 11 U.S.C. § 330 and § 331[2],

---

2. Section 331 provides in relevant part:

> A ... debtor's attorney ... employed under section 327 ... of this title may apply to the

professionals applying for fees payable out of the bankruptcy estate must demonstrate that their services were actual, necessary and reasonable. Specifically, § 330(a)(4)(B) provides in relevant part:

In a ... chapter 13 case in which the debtor is an individual, *the court may allow reasonable compensation to the debtor's attorney* for representing the interests of the debtor in connection with the bankruptcy case *based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.*

11 U.S.C. § 330(a)(4)(B) (emphasis supplied). Those other factors that are referred to are set forth as follows:

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

4(A) Except as provided in subparagraph (b), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

11 U.S.C. § 330(a)(3) and (4)(A).

 The Court has a duty to examine independently the reasonableness of the fees requested. *In re Wyslak,* 94 B.R. 540, 541 (Bankr.N.D.Ill.1988); *In re Chicago Lutheran Hosp. Ass'n,* 89 B.R. 719, 734–35 (Bankr.N.D.Ill.1988). The burden of proof to show entitlement to the fees requested is on the Debtor's Counsel. *See In re Kenneth Leventhal & Co.,* 19 F.3d 1174, 1177 (7th Cir.1994); *In re Stoecker,* 114 B.R. 965, 969 (Bankr.N.D.Ill.1990); *In re Pettibone Corp.,* 74 B.R. 293, 299 (Bankr.N.D.Ill.1987); *Cohn v. United States Trustee (In re Ostas),* 158 B.R. 312, 323 (N.D.N.Y.1993). This burden must "not be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors." *Pettibone,* 74 B.R. at 299 (citations omitted). The fee application must stand or fall on its own merits. *See In re Wildman,* 72 B.R. 700 (Bankr.N.D.Ill.1987). Equity has not challenged the accuracy of the services and time rendered by Debtor's Counsel as detailed in the fee application.

 The Court has utilized the factors cited in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The twelve *Johnson* factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to accep-

---

court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred be-

fore such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331.

tance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.[3]

The Court may determine what is the reasonable amount of time a professional should have to spend on a given project. *Wildman*, 72 B.R. at 713 (citing *In re Shades of Beauty, Inc.*, 56 B.R. 946, 951 (Bankr.E.D.N.Y.1986), *aff'd in part, remanded in part*, 95 B.R. 17 (E.D.N.Y.1988)). The Supreme Court, in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), ruled that "excessive, redundant or otherwise unnecessary" hours should be excluded from the fees sought. In other words, applicants should exercise good faith "billing judgment." *Id.* at 434, 103 S.Ct. 1933; *see also In re Temple Retirement Community, Inc.*, 97 B.R. 333, 339 (Bankr.W.D.Tex. 1989); *In re Pothoven*, 84 B.R. 579, 584 (Bankr.S.D.Iowa 1988).

Reasonable time spent does not necessarily include all time actually expended. *See In re Chas. A. Stevens & Co.*, 105 B.R. 866, 870–71 (Bankr.N.D.Ill. 1989). Hence, the exercise of good faith billing judgment comes into play. Compensation will not be awarded for nonproductive time, or for time spent on services that are duplicative of previously rendered services. Duplication of services constitutes an unreasonable expenditure of time and therefore is noncompensable. In determining what constitutes reasonable compensation, the Seventh Circuit has stated that "there are limits-measured by standards of reasonableness-to what a pro-

fessional can demand in a bankruptcy case." *Leventhal*, 19 F.3d at 1178.

The Seventh Circuit has stated that the appropriate measure for determining reasonable attorneys' rates charged is the market approach. *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir.1992) ("The object in awarding a reasonable attorney's fee ... is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible. In other words the object is to simulate the market where a direct market determination is infeasible."). The Court also views the attorney/client relationship as one in which the terms of the engagement should normally be upheld, including the fee arrangement, so as not to unduly intrude upon the bargain struck between the parties who have entered into an important professional relationship. Moreover, the Seventh Circuit has noted that the Bankruptcy Code requires that attorneys involved in bankruptcy matters receive the same compensation as they would earn in performing similar services outside the bankruptcy context. *See In re UNR Indus., Inc.*, 986 F.2d 207, 209–10 (7th Cir. 1993).

The Court has considered all of the *Johnson* factors. Most pertinent are factors one, two and eight. It is undisputed that Debtor's Counsel put in the time and services detailed. The services provided did benefit the Debtor by staving off post-judgment enforcement proceedings by Equity for over a year. That this case involved difficult and rarely litigated issues is readily apparent from the three Opinions issued by the Court. The fees requested are relatively high for Chapter 13 debtors' attorneys, especially in light of the dismissal of the case and denial of confirmation of any of the proposed plans. There are no customary fees for Chapter 13 debtors' attorneys in such cases before

---

**3.** The *Johnson* factors are referenced in Rule 1.5(a) of the Rules of Professional Conduct for the Northern District of Illinois, applicable here via Local Bankruptcy Rule 608. All of these factors have been considered in this matter and are discussed hereinafter.

the Court-each fee application is considered on an individual basis. The requested fees sought here, however, are substantially higher than those requested by attorneys in the more typical, uncontested Chapter 13 case where the disputed issues are more narrow and easier to resolve. There is no showing that Debtor's Counsel was precluded from other employment by representing the Debtor in this case. The fees requested were not apparently agreed between the Debtor and Debtor's Counsel to be either a "set" or "flat" fee or a contingent fee, but on an hourly rate as is common in this District. The Court finds that the Debtor's Counsel's hourly rate ($250.00 for partner time and $150.00 for associate time), as agreed to by the Debtor and her spouse[4], is reasonable and well within the range of hourly rates charged by other Chapter 13 debtors' attorneys in this District. Equity has not objected to the hourly rate charged and the Court will not further address this issue. Debtor's Counsel is experienced and able and enjoys a good reputation as a member of the bar. Though difficult, the case is not particularly undesirable. There was no showing in the application of any special circumstances surrounding the nature and length of the professional relationship between the Debtor and Debtor's Counsel.

▮▮ Initially, the Court will address the misguided impression that because this is an interim application, the Debtor's Counsel is not required to provided the degree of specificity required if it were a final fee application. The Court does not agree with the Debtor's Counsel's statement that it was unnecessary to present the same degree of detail. To the contrary, each fee application, whether interim or final, must indicate who performed the service and the hourly rate charged for that time expended. The fact that the Debtor's Counsel has not provided

this requisite degree of specificity constitutes grounds in and of itself to deny the interim fees requested. *See, e.g., Pettibone,* 74 B.R. at 301. It is the better exercise of the Court's discretion, however, to reduce the requested fees by $1,000.00 rather than totally disallow the fees.

▮▮ For the following reasons, the Court will not award the Debtor's Counsel the entire amount of the interim fees requested. First, the Court disallows, without prejudice, the approximate fourteen hours of time expended in connection with the preparation of appellate briefs submitted to the Illinois Appellate Court in that proceeding. *See* Exhibit C to Debtor's Counsel's Application for Interim Award of Compensation. The Debtor's Counsel's work there will not be compensated here out of plan payments because that time spent provided no benefit to the Debtor's estate nor was it directly related to this bankruptcy case. *See* § 330(a)(4)(A) and (B). The Court will not compensate work performed in another forum that was not necessary to the administration of the case and not in connection with the bankruptcy case. Thus, the Court disallows the sum of $3,500.00 (14 hours × $250.00 per hour) without prejudice.

▮▮ Second, Debtor's Counsel was unable to propose a facially confirmable plan for the various reasons detailed in the Court's prior Opinions. The Court found four attempts more than ample opportunity to propose a confirmable plan in the approximately eighteen months the bankruptcy case has been pending. Hence, the result obtained for the Debtor in this case does not warrant the award of the entire amount of the fees sought.

Moreover, the time expended by Debtor's Counsel conferred no resultant benefit to the creditors, except for those postpetition secured claimants whose claims were to be paid directly by the Debtor

---

4. The Court notes that the Debtor's spouse was a party to the fee agreement. Thus, Debtor's Counsel can seek payment of all the fees from him under that agreement as he is not a debtor before this Court.

post-petition and pre-confirmation, as proposed in the various plans. In contrast, the pre-petition unsecured creditors have been subject to the automatic stay for over eighteen months while receiving no payments on their claims. They will not receive any of the plan payments made by the Debtor because these monies must be refunded to her, less any allowed 11 U.S.C. § 503(b) claims, like the fee application at bar, pursuant to 11 U.S.C. § 1326(a)(2).[5] Thus, the Court will further reduce the fees requested by $2,500.00.

Finally, the Court was misled with respect to the 401(k) contribution being made by the Debtor. This fact was not disclosed in the Schedules and constituted grounds for the Court to dismiss the case with a one-year bar for refiling. *See McNichols*, 254 B.R. at 436. Whether this was the result of the Debtor's intentional or unintentional failure to provide that information to the Debtor's Counsel or, more likely, the Debtor's Counsel's failure to disclose this information when preparing the Schedules, the fact remains that the Court, the Trustee and the creditors were misled by the information contained in the Schedules. The effect of omitting the ongoing payroll deduction for the 401(k) plan on Schedule I, as a subtraction from the Debtor's gross payroll, was to conceal its existence from the Court-a very material and misleading omission. Although Debtor's Counsel has argued that a copy of the Debtor's payroll stub was furnished at the § 341 meeting of creditors, the Court was unaware of same until the August 18, 2000 trial when a copy was admitted into evidence. Because the Court is prohibited from attending creditors' meetings under § 341(c), the effect of failing to properly disclose and schedule that payroll deduction on Schedule I was to completely conceal from the Court the existence of this substantial ongoing retirement contribu-

tion and distort the true picture of the Debtor's income, which is critical to the disposable income analysis mandated under 11 U.S.C. § 1325(b). Because it is clear that Debtor's Counsel was aware of this situation and participated in the reported income distortion and resultant concealment from the Court, his fees should be substantially reduced.

The Court rejected the Debtor's argument that the Bankruptcy Code and the Official Forms warranted and mandated that this information not be disclosed. *See McNichols*, 255 B.R. at 876–77. To the contrary, Official Form 6, Schedule I requires the disclosure of all payroll deductions for the Debtor and her non-debtor spouse, including payroll taxes and social security, insurance, union dues and "other." The 401(k) plan contribution should have been disclosed under the "other" category. The Court will not condone the failure of the Debtor and the Debtor's Counsel to fully and accurately disclose all of her payroll deductions. The Debtor's bankruptcy case was dismissed, in part, for this reason and, for the same reason, the Court will not award the Debtor's Counsel the entire amount of fees he has requested. Hence, the requested fees are further reduced by the sum of $5,000.00 for such misleading and material omission.

The Court will award the Debtor's Counsel some substantial fees because the work performed did benefit the Debtor. His efforts did preserve the Debtor's exempt assets and protect her homestead while attempting to propose a facially confirmable plan. Based on the Debtor's Counsel's efforts, which did provide some intended benefit to the Debtor, the Debtor's estate and some of the various secured creditors, the Court hereby awards the

---

**5.** Section 1326(a)(2) provides in pertinent part:

A payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. . . .

If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title.

11 U.S.C. § 1326(a)(2).

Debtor's Counsel $6,000.00 in interim compensation.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Equity's motion for sanctions. The Court awards the Debtor's Counsel interim compensation in the sum of $6,000.00.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.